In the Matter of **NORTH ATLANTIC AND GULF STEAMSHIP COMPANY,** Incorporated, Nortropic Shipping Company, Incorporated, Debtors.

United States District Court
S. D. New York.
Feb. 27, 1961.

---

Bergerman & Hourwich, New York City, for Trustee. Milton M. Bergerman, New York City, William Baranoff, Edward Schilling, New York City, of counsel.

John K. Keegan, New York City, for Consolidated Edison Co., of New York, Inc. Samuel Levine, New York City, of counsel.

Barr, Robbins & Palmer, New York City, for New York Sandy Hook Pilots Assn. and New Jersey Sandy Hook Pilots Assn. Francis P. Waters, New York City, of counsel.

Sidney Gottlieb, New York City, for George B. Mason.

E. Newton Wilmington, New York City, for New York Telephone Co.

Abberley, Kooiman & Amon, New York City, for McRoberts Protective Agency, Inc. D. C. Johnson, New York City, of counsel.

**108**

FREDERICK van PELT BRYAN, District Judge.

The trustee has moved to classify a number of alleged priority claims as general unsecured claims against the estate. Most of these claims were disposed of upon the argument of the trustee's motion. Several, however, remain for disposition.

1. Claims of Sandy Hook Pilots.

Priority claims have been filed on behalf of a number of Sandy Hook pilots as follows:

Ralph Ferd, as agent of 21 pilots, for a total of $2,112.58,—now reduced to $1,-412.53; T. A. McGoldrick, as agent of 9 pilots, for a total of $825.01, now reduced to $578.13; George B. Mason, pilot, on his own behalf in the sum of $702, now reduced to $620.

Ferd and McGoldrick, as agents, have cross-moved to classify these claims as entitled to priority of payment as wages earned within the three months of the filing of the petition not exceeding $600 as to each claimant, under Section 64, sub. a(2) of the Bankruptcy Act, 11 U.S. C.A. § 104, sub. a(2). Claimant Mason takes the same position. All of the claims are for services rendered in piloting vessels operated by the debtor in or out of New York Harbor.

The trustee asserts that these claimants are not "workmen, servants, clerks, or traveling or city salesmen on salary or commission basis" but are independent contractors and hence are not covered by the priority granted by Section 64, sub. a(2).

The pilots represented by Ferd and McGoldrick as agents are respectively members of the New York Pilots Benevolent Association and the New Jersey Pilots Benevolent Association. Mason is also a member of the New York Association. The situation of the New York pilots may be taken as typical. Under Article VI of the New York Navigation Law, McKinney's Consol. Laws, c. 37, all vessels entering or departing from the Port of New York by way of Sandy Hook are required to take a Sandy Hook pilot licensed either by New York or New Jersey. New York Navigation Law, § 88. The pilot is entitled to fees fixed by law for such services at the rate of $7 per foot for each foot of water the vessel is drawing at the time of her entrance or departure. New York Navigation Law, § 96. The pilotage fees are payable to and may be sued for and recovered by the first Sandy Hook pilot who tenders his services whether such services are accepted or refused. New York Navigation Law, § 89–a.

Pilots are licensed by the Board of Commissioners of Pilots. They must first serve at least four years apprenticeship under instruction by the Sandy Hook Pilots Benevolent Association. They then are examined and licensed by the Board if qualified. The Commissioners are entitled to license as many pilots as they deem necessary to pilot ships to and from the Port of New York by way of Sandy Hook. New York Navigation Law, § 90.

Practically speaking, when a ship approaches Sandy Hook it engages a pilot by calling one of the Pilot Associations which then sends a licensed pilot to the ship. The fees of each pilot are paid separately by the shipowner at the rates prescribed by law. The Pilots Association is not the employer of the pilots but merely performs administrative functions for them by way of bookkeeping and billing, and also, as previously noted, controls and instructs apprentices in their duties. Rarely, if ever, does the vessel specify any particular pilot and pilots are used on a rotation basis set up by the Association.

■ Statutes granting priorities are strictly construed and the burden of establishing a right to statutory priority rests upon the claimant. In re American Anthracite & Bituminous Coal Corp., D.C.S.D.N.Y., 171 F.Supp. 377; In re Paradise Catering Corp., D.C.S.D.N.Y., 36 F.Supp. 974.

■ There is no rule of thumb by which persons may be classified as wage earners for purposes of Section 64, sub.

a(2). "The classification of any particular employment in a given case as within, or without, the scope of Section 64a(2) must rest however upon a careful calculation of the circumstances as a whole". 3 Collier, Bankruptcy, 2095 (14th ed.).

The circumstances here make it plain that these claimants are not "workmen, servants, clerks, or traveling or city salesmen on salary or commission basis" within the meaning of Section 64, sub. a(2).

The pilots are persons with special skill and competence who are performing professional services for the incoming vessels on a fee basis. They are specially licensed by the state to perform such services and the compensation which is required to be paid them therefor is specifically denominated as a fee by the statute. The fee is predicated on the draft of a vessel. For example, on a vessel drawing 10 feet the fee at the rate of $7 per foot would be $70; on a vessel drawing 25 feet the fee at the same rate would be $175.

The pilot does not work regularly for any one shipowner or any one vessel. He is engaged by one vessel after another as she enters or leaves the port and it is only by the accident of rotation that the pilot works for the same vessel or shipowner again.

The claimants here rendered pilotage services on specific dates to various incoming and outgoing vessels operated by the debtor, each one apparently having piloted one vessel either entering or departing from the port. They were not treated as employees by the debtor or other shipowners or operators. Income taxes are not withheld from their fees. The vessels do not engage specific pilots but simply take them as they come. The pilots exercise their independent judgment and neither the master nor the owner exercises any appreciable supervision or control over them.

These facts make it plain that the ordinary relationship of employer-employee which is contemplated by Section 64, sub. a(2) does not exist here. 3 Collier, Bankruptcy, 2090 (14th ed.) and cases there cited. The pilots are in the nature of independent contractors for professional services on a fee basis.

The priority established by Section 64, sub. a(2) was designed for persons likely to be solely dependent for their livelihood on the wages received from their employer and who will therefore suffer serious hardship because of their employer's bankruptcy if their wage claims are not given priority. Blessing v. Blanchard, 9 Cir., 223 F. 35. The livelihood of these claimants is not dependent upon the solvency of the debtor here, nor, indeed, of any one shipowner. They serve many different vessels in the course of a year and only occasionally serve any one owner. They are not in need of the special protection which Section 64, sub. a, was designed to give. Thus, they do not fall within the ambit of the policy behind Section 64, sub. a(2) any more than they come within its language.

The claimants are therefore not entitled to priority under Section 64, sub. a(2). The trustee's motion to classify these claims as general unsecured claims is granted and the cross-motions of the claimants for priority are denied.

Settle order on notice.

### 2. The Claims of the Utilities.

Priority claims have been filed (1) by Consolidated Edison of New York, Inc. in the sum of $216.43 for gas and electricity supplied at Pier 51 under lease to the debtor from May 23, 1958, the date of filing the petition, until June 19, 1958, the date of appointment of the trustee, and (2) by New York Telephone Company in the amount of $1,079.78 for telephone services rendered at the debtor's offices at 120 Wall Street during the same period.

These claimants assert that their claims are for "actual and necessary costs and expenses of preserving the estate subsequent to filing the petition" and "costs and expenses of administration" under § 64, sub. a(1) of the Bankruptcy Act.

The trustee does not seriously question that the services provided were necessary to preserve the estate during the period when the debtor was in possession after the petition had been filed and until the appointment of the trustee and there is no doubt that they are.

Under these circumstances the claims would seem to be governed by my prior decision in this proceeding holding that the claim of the landlord for rental from the time of filing the petition until the date of appointment of the trustee was entitled to priority payment as an administration expense. In re North Atlantic & Gulf Steamship Co., D.C.S.D. N.Y., 166 F.Supp. 29, affirmed 120 Wall Associates v. Schilling, 2 Cir., 266 F.2d 548.

The trustee urges, however, that the utility claimants are in a different position from the landlord since they may cut off service if they wish and therefore continue service only at their own risk. Quite apart from the fact that the utilities are required to give five days' notice of the termination of service, a holding encouraging, or, indeed, practically forcing them to cut off service would be disastrous for any estate in which the continuation of the business was important to a successful administration. The utility services are plainly essential to the continuance of a going business and thus to the preservation of the estate itself. They are entitled to priority of payment during the interim period between the filing of the petition and the appointment of the trustee during which the Chapter X estate is in custodia legis.

I am not persuaded by the indications in Collier to the contrary. See 3 Collier, Bankruptcy, §§ 62.30, 63.34, 64.02, 64.-102, and 6 Collier, Bankruptcy, § 9.19 (14th ed.). But see 6 Remington, Bankruptcy, §§ 2633, 2634, 2656 (5th ed.). See, also, In re Warner Coal Corp., D.C. W.Va., 83 F.Supp. 961.

Nor do I find anything in Sections 201 and 63, sub. b, of the Bankruptcy Act, 11 U.S.C.A. §§ 601 and 103, sub. b dealing with the provability of claims arising after the filing of the petition and before the appointment of a receiver or an adjudication which compels a contrary conclusion.

The trustee's motion to classify the claims of these utilities as general unsecured claims is denied and they are allowed as claims entitled to priority of payment as expenses of administration.

Settle order on notice.

### 3. The Claim of McRoberts Protective Agency.

■ This claim in the amount of $191.60 is for gatemen supplied to Pier 51 from June 16 to June 19, 1958, when the trustee was appointed. Priority is also asserted under § 64, sub. a(1) as a necessary cost of preserving the estate and an expense of administration.

The trustee concedes that there was cargo being handled at Pier 51 during this period which required protection. Thus, these services were necessary for the preservation of the estate within the meaning of § 64, sub. a(1) and are an expense of administration.

The claim is entitled to priority of payment upon the same reasoning as was applied to the utilities claims.

The trustee's motion to allow this claim as a general unsecured claim is denied.

Settle order on notice.