**In the Matters of NORTH ATLANTIC AND GULF STEAMSHIP COMPANY, INCORPORATED, Nortropic Shipping Company, Incorporated, Debtors.**

United States District Court
S. D. New York.
Jan. 2, 1962.

See also D.C., 192 F.Supp. 107.

Bergerman & Hourwich, New York City, Milton M. Bergerman, Albert F. Reisman, New York City, of counsel, for trustee.

Abberley, Kooiman, Amon & Marcellino, New York City, D. C. Johnson, New York City, of counsel, for McRoberts Protective Agency, Inc.

John M. Keegan, New York City, Samuel Levine, New York City, of counsel, for Consolidated Edison Co. of New York, Inc.

Foley & Martin, New York City, James S. Reardon, New York City, of counsel, for McAllister Brothers, Inc.

Murray E. Gottesman, New York City, for Desk Transp. Co., Inc.

FREDERICK van PELT BRYAN, District Judge.

The trustee petitions for an order directing repayment of sums paid by the debtor North Atlantic and Gulf Steamship Company, Incorporated, to four creditors during the interim period between the filing of the petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. on May 23, 1958, and the approval of the petition and the appointment of the trustee on June 19, 1958.

The four creditors, McRoberts Protective Agency, Inc., Desk Transportation Company, Inc., McAllister Brothers, Inc., and Consolidated Edison Company of New York, Inc., deny the trustee's right to recover the sums paid them, and McRoberts cross-petitions for leave to amend the general claim which it filed on April 30, 1959 so as to assert a priority for a balance due it.

McRoberts is a detective agency which supplies uniformed cargo guards, rounds-men, gatemen, supervisors and other security personnel to various individuals and corporations located in and about the New York metropolitan area. It supplied such services for the debtor at debtor's Pier 51, North River, pursuant to an oral agreement, billing debtor weekly for the reasonable value of the services. By May 28, 1958, there was due and owing to McRoberts $7,668.16 for services performed from March 17, 1958 to May 23, 1958, the date when the petition was filed. The debtor remained in possession until the petition was approved and the trustee appointed on June 19, 1958. On May 28, 1958 McRoberts received a check from debtor in the sum of $1,136.27, and on the next day one in the sum of $1,061.60, a total of $2,197.87. The trustee seeks to recover the amount so paid from McRoberts, and McRoberts seeks leave to assert a priority claim in the sum of $5,470.29 for the unpaid balance of its account.

On May 15, 1958 Desk Transportation performed services in moving the debtor into smaller quarters. Desk Transportation maintains that the work was done with the understanding that it was to be paid for immediately. On May 29, 1958, some two weeks later, and after the petition had been filed, it received a check from the debtor in the amount of $200. The trustee seeks to recover this payment.

McAllister Brothers is a corporation engaged in the business of towing ocean-going vessels. It performed towing services for debtor from April 11 to May 26, 1958, in connection with vessels which debtor had time-chartered, and received payments therefor on June 9 and June 12, 1958, totaling $4,059.05 which trustee seeks to recover.

Consolidated Edison Company received a check for $532.67 from the debtor on June 10, 1958 in payment for electric service supplied from March 14, 1958 to April 14, 1958. There is still due and owing to Consolidated $577.40 for service from April 14, 1958 to May 23, 1958, and $216.43 for service from

May 23, 1958 to June 19, 1958. The latter amount has been allowed as a priority claim (see In re North Atlantic & Gulf Steamship Co., D. C., 192 F.Supp. 107, 109) but remains unpaid.

McRoberts and Desk Transportation both assert first, that the payments made to them come within the purview of § 70, sub. d(1) of the Bankruptcy Act (11 U.S.C.A., § 110, sub. d(1)),[1] and second, that if § 70, sub. d(1) is not applicable their claims are entitled to priority under the so-called "six months priority rule" for operating expenses deemed necessary to the continued operation of the business of the debtor. McRoberts' cross-petition for priority on the balance of debtor's obligation to it is also based on the six months rule.

## I.

Under § 70 sub. d(1) transfers made between the filing of the petition and adjudication of bankruptcy are valid only if there is "good faith" and "present fair equivalent value" (or "present consideration"). The Court of Appeals for this Circuit has recently interpreted "present * * * value" as used in this section so as to exclude such transactions as are involved here. Kass v. Doyle, 275 F.2d 258 (2 Cir.1960).

The court there said (pp. 261, 262):

"Whether the transfer of value to the bankrupt precedes or follows the receipt of consideration from him, or the two occur simultaneously, does not affect the fulfillment of the statutory purpose, *so long as the consideration upon both sides passes during the pendency of the petition.* * * * It is clear from the purposes of § 70, sub. d that it does not afford protection to the payment of an antecedent debt by the bankrupt, since validation of such payments would

not increase the ability of the bankrupt to carry on every day business transactions during the pendency of the petition, see In re Scranton Knitting Mills, Inc., D.C.M.D. Pa., 1937, 21 F.Supp. 227, and would deplete the assets of the estate available for other creditors." (Emphasis added.)

The payments made by debtor to both McRoberts and Desk Transportation were for debts antecedent to the filing of petition and the consideration did not pass while the petition was pending. There was no present value or consideration.

In view of this conclusion I do not reach the "good faith" requirement of § 70, sub. d(1), though it may be noted that this question was raised by the trustee who submitted evidence that the initial checks made out to both McRoberts and Desk Transportation were not cleared by the bank and that the payments to them were made by second checks replacing the unpaid first ones.

## II.

■ McRoberts and Desk Transportation also urge that the payments made to them were for services essential to the continued operation of the debtor's business rendered within six months prior to the filing of the petition and that they are therefore entitled to priority of payment. The so-called six months priority rule originated in railroad receivership cases in the federal courts (see Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1878)) and was eventually extended to other public and quasi-public corporations. In cases where it is applicable it

"gives to those unsecured creditors whose claims arose a reasonably short time before the receivership, and which were incurred as operating expenses (without the extension

---

1. § 70, sub. d. "After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—
"(1) A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred."

of long-time credit), a priority over both secured and unsecured creditors as to the debtor's current income and also a priority over secured and unsecured creditors as to the corpus of the debtor's property, where \* \* \* the claims involved arose from services, materials furnished, or the like, which were deemed necessary to the business of the debtor."

6 Collier on Bankruptcy (14th ed.), pp. 2852–2853.

The rule is said to be grounded both on considerations of public policy and equity and good conscience. See Collier, supra, pp. 2853–2854. However, it "is an invasion of the established contract rights of lienholders. As an invasion the rule should be strictly contained within narrow confines and limited to the purposes which brought it into being." Johnson Fare Box Co. v. Doyle, 250 F.2d 656 (2 Cir.1958). The rule was incorporated in former § 77B of the Bankruptcy Act but it was omitted from Chapter X because of doubts as to whether it could constitutionally be extended to private corporations and because of apprehension that its application might raise problems not present in equity receiverships. However, deletion of the rule from Chapter X is not of controlling significance and it may be applied by the court in appropriate Chapter X proceedings in the exercise of its equitable discretion.

With rare exceptions the rule has been confined to cases involving public or quasi-public corporate debtors where there is a public interest in the continued operation of the business and a necessity for current payment of operating expenses in order to keep such a business going. In addition to railroads such enterprises as utility or public transportation systems have been deemed to fall within this category. See, e. g., Johnson Fare Box Co. v. Doyle, supra. Generally speaking, the rule has not been extended to private corporations. See In re Pusey and Jones Corp., 192 F.Supp. 233 (D.

Del. 1961), aff'd Court of Appeals, 3 Cir., 1961, 295 F.2d 479.

However, in Dudley v. Mealey, 147 F.2d 268 (2 Cir. 1945) it was held that the District Court did not abuse its discretion in applying the six months rule so as to grant priority of payment to unsecured creditors who furnished supplies to a hotel undergoing a Chapter X reorganization for a short time before the receivership. The court pointed out that the goodwill of the hotel depended upon its continued operation and that preservation of the goodwill was necessary in order to preserve its value for the benefit of the various classes of bondholders and other secured creditors. The continuation of the existing business was for all practical purposes in the interest of lienholders alone, and it was appropriate to give priority to the claims of suppliers in so far as these were necessary to keep the hotel open and operating. However, I do not read Dudley v. Mealey as authorizing a blanket extension of the six months rule to private corporate debtors but as limited to the facts and circumstances then before the court.

The most recent case on the subject is In re Pusey and Jones Corporation, supra. There the Court of Appeals of the Third Circuit affirmed a holding of the District Court which refused to apply the six months rule in a case involving a paper making machinery company. The Court of Appeals of the Third Circuit stated that the extension of the rule to private businesses was not justified since it would create an entirely new class of preferred creditors not provided for by the Bankruptcy Act consisting of those who supplied goods to a failing corporation in order to keep it going during the six months prior to reorganization proceedings and would apply whether the reorganization proceedings were successful or whether they failed. The court went on to say (295 F.2d at 480):

"We do not think that this is a good result. The bankruptcy statute has specific provisions concern-

ing the order in which claims are arranged for distribution of a bankrupt's estate. We think it is undesirable to create a new class of creditors by judge-made rules which would transcend the provisions carefully worked out in the bankruptcy act. If a new class of preferred creditors is to be established it should be done by the statute and not by ourselves."

As pointed out in the opinion of the District Court (which the Court of Appeals characterized as "thoroughly considered") "the policy of the Bankruptcy Act has always been to eliminate all special individual priorities and preferences in order to allow creditors to share in the bankrupt estate equally, within their class." In re Pusey and Jones Corporation, supra. See, also, Kohn v. Myers, 266 F.2d 353 (2 Cir. 1959).

In the case at bar there are no special circumstances such as existed in Dudley v. Mealey, supra, which would justify the extension of the six months rule to the proceeding at bar. There is no showing here either of compelling necessity for the continued operation of this debtor's business in terms of public interest, nor is there any substantial class of lienholders whose interests would have been jeopardized had the operation been terminated earlier. I see no reason here to exercise my discretion so as to create a special class of creditors not provided for in the sections of the Bankruptcy Act specifically fixing the order in which claims are arranged for purposes of distribution of the bankrupt estate. Without going into the nature of the services rendered I do not perceive any good reason why McRoberts and Desk Transportation should be entitled to priority of payment over other creditors. I refuse to apply the six months rule in the case at bar and hold that these creditors are not entitled to priority payment.

### III.

The same considerations apply to the payments made by the debtor in possession to McAllister Brothers and Consolidated Edison. However, each of these claimants raises an additional question which requires brief discussion.

McAllister claims that the towing services performed gave rise to maritime liens on the vessels which were towed under 46 U.S.C. § 971. The payments to McAllister by the debtor necessarily resulted in a discharge of any such liens. McAllister therefore argues that the discharge of the liens constituted a "present fair equivalent value" for the payments made to it as required by § 70, sub. d(1) of the Bankruptcy Act, despite the fact that the towing services were rendered before the filing of the petition and the debts paid were antecedent thereto.

■■ There is no merit to this contention. The term "value" as used in § 70 sub. d(1) means services performed or tangible property. Kass v. Doyle, supra. The towing liens on which McAllister relies are not within these categories. Moreover, the vessels to which the liens would attach under 46 U.S.C. § 971 were not owned by the debtor but were time chartered. There is no indication that the existence of the liens affected the debtor's business in any way either before or after the filing of the petition or even that attempted foreclosure would have done so. Any extinction of maritime liens for towing services which resulted from the payments made to McAllister does not constitute "present fair equivalent value" within the meaning of § 70, sub. d(1) and the payments to McAllister do not come within the purview of that section.

■ Consolidated Edison urges that under § 60, sub. c of the Bankruptcy Act it is entitled to set off the $577.40 which the debtor owes it for the period from April 14 to May 23, 1958 against the payment of $532.67 made to it by the debtor in possession for the period from March 14 to April 14, 1958. This contention is also devoid of merit. Apart from other considerations making § 60, sub. c inapplicable, the section applies only to further credits extended *after* the creditor was preferred. Here the

credit which Consolidated seeks to set off was extended before the preferential payment was made, not "afterward" as the statute requires.

The trustee's petition is granted in all respects. The cross-petition of Mc-Roberts Protective Agency is in all respects denied.

Settle order 6n notice.