Hugh B. WHITE, White & Jones, Inc., Biss & Holmes, John W. Pletcher III, Merdes, Schaible, Staley & Delisio, Inc., Northern Adjusters, Inc., and Orca Adjustment Service, Petitioners,

v.

STATE of Alaska, ex rel. Richard L. BLOCK, Director of Insurance, Department of Commerce and Economic Development, and Alaska Insurance Guaranty Association, Respondents.

No. 4224.

Supreme Court of Alaska.

July 6, 1979.

Douglas J. Serdahely; Birch, Horton, Bittner & Monroe, Anchorage, for petitioners.

M. T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Juneau, Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Anchorage, for respondents.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

This petition for review arises out of an order entered by the superior court in proceedings to liquidate trust accounts for the assets of insolvent insurance companies.

The order provides that petitioners should have the last priority among claimants. We reverse and remand.

The facts and circumstances underlying this litigation are set out in *White v. Alaska Insurance Guaranty Association*, 592 P.2d 367 (Alaska, 1979), and will not be repeated here. Petitioners are general creditors of insolvent insurance companies whose assets were placed into receivership[1] pursuant to Chapter 78 of Title 21 of the Alaska Statutes. The assets amounted to approximately $260,000. In addition to petitioners' claim for approximately $84,000, three other classes of creditors filed claims against the assets: the receiver, for its expenses incurred in the liquidation, including expenses of the Alaska Insurance Guaranty Association in handling claims against insolvent insurers;[2] the State of Alaska, for taxes owed, in the amount of $38,000; and the Alaska Insurance Guaranty Association, for "covered claims" which it is obligated by statute[3] to pay to policyholders and claimants of insolvent insurance companies, together with claims which would have been "covered" but for the statutory limits on payments by the Guaranty Association, in the amount of approximately $1,565,000.

On December 5, 1977, the receiver filed a motion to establish priorities of claimants and procedure of liquidation pursuant to the superior court's earlier order. *See* note 1, *supra*. Over opposition from petitioners, the court ordered that claimants shall be paid out of receivership assets in the following order of priority: (1) Expenses of the receiver and of the Alaska Insurance Guar-

---

1. On September 16, 1976, the superior court ordered the State Director of Insurance, as receiver, to establish liquidation trust accounts for the assets of the companies.

2. Neither petitioners nor respondents have provided us with a dollar amount of administrative expenses.

3. AS 21.80.060(a)(1) provides:
 *Powers and duties of the association.* (a) The association shall
 (1) be obligated to the extent of the covered claims existing before the determination of insolvency and arising within 30 days after the determination of insolvency, or before the

policy expiration date if less than 30 days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within 30 days of the determination, but this obligation includes only that amount of each covered claim which is in excess of $100 and is less than $300,000, except that the association shall pay the full amount of any covered claim arising out a workmen's compensation policy; in no event is the association obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

anty Association in handling claims; (2) Amounts paid or to be paid by the Insurance Guaranty Association as "covered claims", aggregated with claims which would have been "covered" but for the limitations on liability under the deductible provisions of the statute,[4] with the proviso that if there were insufficient funds, these claims would be paid on a pro-rata basis; (3) Taxes due and owing the State of Alaska; and (4) Claims by general creditors of the companies in receivership, including claims of petitioners, with the proviso that if funds remaining after paying claimants of higher priority were insufficient to cover the claims of general creditors, they would be paid on a pro-rata basis. All parties agree that it was proper for the court to accord first priority to the administrative expenses of the receiver and the Guaranty Association.[5] Petitioners challenge the remainder of the priority schedule on two grounds: first, they argue that their claims are entitled to priority status because they are in the nature of "compensation actually owing to employees . . . of an insurer." In the alternative, they argue that it was error for the superior court to subordinate the claims of petitioners (undeniably thereby defeating them) to any claims other than those for administrative expenses.

I

The statutory scheme for liquidation of the assets of an insolvent insurance company gives priority status to the claims actually owed to employees of the insurance companies,[6] after the expenses of administration of the insolvency have been paid. Petitioners are claims adjusters and attorneys who rendered professional services to the insurance companies. They argue that the provision according priority to employee wage claims is a unique creation of Alaska law and that, therefore, it must be interpreted in reference to the general law of Alaska in which, "[t]raditionally, the claims of attorneys for compensation for services rendered occupy a uniquely favored position." Whether this conclusion is true or not, the predicate is somewhat of an overstatement; the federal Bankruptcy Act[7] gives priority to wage claims on terms and conditions strikingly similar to the Alaska statute.[8] This analogous provision of the Bankruptcy Act has been strictly construed: "amounts due independent contractors are not within the wage claim priority." See 6

4. *Id.*

5. AS 21.78.260(a) gives priority to "the expenses of administration" of the receivership. AS 21.80.090(b) gives priority to "expenses of the [Guaranty] association . . . in handling claims . . . ."

6. AS 21.78.260(a) provides:
Compensation actually owing to employees other than officers of an insurer, for services rendered within three months before the commencement of a proceeding against the insurer under this chapter, but not exceeding $500 for each employee, shall be paid before the payment of any other debt or claim, and in the discretion of the director may be paid as soon as practicable after the proceeding has been commenced; except that at all times the director shall reserve the funds which will in his opinion be sufficient for the expenses of administration.

7. Bankruptcy Act § 64(a)(2), 11 U.S.C.A. § 104(a)(2) as amended.

8. *Id.* 11 U.S.C.A. § 104(a)(1) and (2) provide: § 104. Debts which have priority

(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; . . . (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; and for the purposes of this clause, the term "traveling or city salesman" shall include all such salesmen, whether or not they are independent contractors selling the products or services of the bankrupt on a commission basis, with or without a drawing account or formal contract; . . . .
The purpose of this priority is to provide a protective cushion for workmen against economic displacement caused by an employer's bankruptcy. *Joint Industry Board of the Electrical Industry v. United States,* 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968).

Remington, Bankruptcy § 2796, at 371 (5th ed. 1952), and cases cited therein. In the absence of any authority cited by petitioners to the contrary, we find no reason to disturb the holding of the superior court that the attorneys and adjusters rendered professional services as "independent companies or contractors" and not as employees. Therefore, petitioners are not entitled to any priority in the nature of a wage claim. *See, e.g., In re North Atlantic & Gulf S. S. Co.*, 192 F.Supp. 107 (S.D.N.Y. 1961).

## II

The only statutory priorities among claimants against the assets of an insolvent insurance company are those accorded to expenses of administration of the insolvency [9] and wage claims.[10] Petitioners contend that absent explicit statutory authority, it was improper to subordinate their claims to those of the State or the Guaranty Association. Respondent State of Alaska takes the position that the superior court's broad authority under the liquidation statute [11] "justifies and mandates" consideration of general requirements of equity in setting priority among creditors: since the Guaranty Association performs a public service and was created by the legislature to "make whole" policyholders and claimants of insolvent insurance companies, its claims against the assets in receivership were properly given preference over those of petitioners.[12] Respondent Guaranty Association agrees with the State that it is appropriate to further statutory purposes of protecting these policyholders and claimants by according the Association priority in the liquidation assets. This is a question of first impression for this court and we will look to fundamental principles of the law of insolvency for guidance.

 Bankruptcy liquidation is based upon the principle of equality of treatment among all creditors. 3 Collier on Bankruptcy ¶ 57.07, at 163 (14th ed. 1977). There is no presumption of priority among claims. 6 Remington, Bankruptcy § 2778, at 342. The purpose of the federal Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate. *United States v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959); *Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382 (1930). But equitable principles play a limited role in adjusting claims among creditors who have no statutory priority entitlement to liquidation assets. Subordination [13] of claims of one gen-

9. *See* note 5, *supra*.

10. *See* note 6, *supra*.

11. AS 21.78.010(a) authorizes the court to "make all necessary and proper orders to carry out the purposes of this Chapter."

12. The State offers no argument in support of the priority which the lower court assigned to state taxes due and owing.

13. There is a distinction between "priority of claims" and "subordination of claims".

The basis upon which the court acts in recognizing superior equity of some claims over others, in instances such as we are here dealing with, is usually estoppel, though it may be estoppel arising from an express agreement as well as estoppel by conduct. Some authorities have referred to claims which are accorded better rights in the assets than others which are subordinated thereto as "preferred" claims, and to the holders thereof as "preferred" creditors; but either such expression is unfortunate and likely to cause confusion with the distinct field of preferential transfers. Nor should the word "priority" be used with respect to such claims unless it is made clear that the priority is equitable only, having no relationship to legal priority rights under § 64 of the Act. Actually, subordination of the claims of one creditor as against another, whether by contract or on the theory of estoppel in pais, involves no special bankruptcy law but is an application of equity jurisprudence to the facts at hand. It has been well described as a means of regulating distribution results by adjusting the order of creditors' payments to the equitable levels of their comparative claim positions. The aim is to undo or offset any inequity in the claim position of a creditor that would produce injustice or unfairness to other creditors in terms of bankruptcy results, and its most common use is to nullify fraud and prevent unjust enrichment. 6 Remington, Bankruptcy § 2874 at 486–87 (footnotes omitted).

eral creditor to those asserted by other general creditors is within the general equity power of a court only where the claim to be subordinated is acquired or asserted contrary to established equitable principles. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas & Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). *See also Prudence Realization Corporation v. Geist*, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293 (1942). Fraud, unfairness, or breach of the rules of "fair play" is essential to a decision to subordinate. *Farmers Bank of Clinton v. Julian*, 383 F.2d 314 (8th Cir. 1967); *In re Jim Clay Tobacco Co.*, 355 F.Supp. 274 (D.Ga.1973). A perceived inequity resulting from the valid claim of an innocent party against the assets of a bankrupt will not suffice. *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948). Absent inequitable conduct of a claimant, a court is without power to consider the general requirements of equity in setting priorities among creditors, *In re Ahlswede*, 516 F.2d 784 (9th Cir. 1975), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1976).

█ While we are sympathetic to the public policy arguments of respondents that the creation of the Guaranty Association as a self-insurer to step in and assume the obligations of insolvent insurance companies indicates a "preference" for claims of the Association against the assets held in receivership, any decision to accord priority to their claims must come from the legislature and not this court. The United States Supreme Court rejected a similar public policy argument urged by the National La-bor Relations Board to accord its back pay orders against a bankrupt employer priority status among wage claims:

> "The Board argues that the interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment. Whether that should be done is a legislative decision. . . . The theme of the Bankruptcy Act is 'equality of distribution' *Sampsell v. Imperial Paper and Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293; and if one claimant is to be preferred over others, the purpose should be clear from the statute."

*Nathanson v. National Labor Relations Board*, 344 U.S. 25, 28–29, 73 S.Ct. 80, 82–83, 97 L.Ed. 23, 29 (1952).

█ For these reasons we hold that it was error for the superior court to order a schedule of priorities among creditors. We hold that after all statutory priorities are satisfied, if the remaining assets are insufficient to satisfy all claims of all other creditors, they are to share pro-rata in whatever payment is made. *See,* Moore, Debtors and Creditors Rights § 8, at 8–96 (4th ed. 1974).

REVERSED and REMANDED with directions to enter an order in accordance with this opinion.