Donald R. BROOKS and Lois M. Brooks, Appellants,

v.

R & M CONSULTANTS, INC., an Alaskan Corporation, and Valley Lumber & Building Supply, Inc., an Alaskan Corporation, Appellees.

No. 4922.

Supreme Court of Alaska.

June 20, 1980.

Bruce Horowitz, Alaska Legal Services Corp., Juneau, for appellants.

Shirley F. Kohls and Steve U'Ren, Shirley F. Kohls, Law Offices, Juneau, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

DIMOND, Senior Justice.

Presented here is this question: When real estate abandoned by the trustee in bankruptcy is sold for more than the value of the encumbrances on it, should the excess go to the bankrupts or to creditors claiming on the basis of unfiled materialmen's liens?

The bankrupts, Donald and Lois Brooks, owned property in Alaska, subject to a deed of trust executed by them to Title Insurance Agency, Inc., for the benefit of the state veterans' affairs agency. In early 1977, R & M Consultants, Inc., ("R & M") performed engineering services for the Brooks in connection with this property, for which the Brooks owed almost $7,000. Shortly thereafter, Valley Lumber Company, Inc., ("Valley") furnished the Brooks with building supplies worth almost $17,000. R & M and Valley filed suit against the Brooks in August, 1977, after the Brooks had failed to pay their debts. R & M and Valley received court permission to serve the Brooks out of state, but both attempts at service failed. They filed notices of *lis*

*pendens* on the Brooks' property, under AS 09.45.790.[1]

On October 26, 1977, the Brooks filed a petition of bankruptcy in the United States District Court in Idaho, and the petition was granted in January, 1978.[2] R & M and Valley both filed claims with the bankruptcy court as general unsecured creditors. On February 10, 1978, that court ordered the property at issue here abandoned as an asset of the Brooks' estate, because the court believed it was encumbered in excess of its value. R & M and Valley did not object to the report of the trustee in bankruptcy which recommended abandonment.

When the property was sold, in July, 1978, an amount of $25,992.70 in excess of the veterans' affairs agency's encumbrance was unexpectedly realized. Title Insurance Agency paid this sum into the superior court registry and brought an action in interpleader against all the claimants. After judgment was granted to the state on its tax liens and to other creditors with judgment liens on the property, $10,507.11 remained. This is the sum at issue now.

■ The parties are in agreement on most of the basic principles of law relevant here. Under 11 U.S.C. § 35, the law in effect at the time of this action, unsecured debts are discharged in bankruptcy, with exceptions not important here.[3] The trustee is empowered to abandon property which he or she perceives as burdensome to the bankrupt estate. *See Brown v. O'Keefe*, 300 U.S. 598, 602–03, 57 S.Ct. 543, 546, 81 L.Ed. 827, 832 (1937). After encumbrances on such property have been cleared, the debtor is entitled to "make what he can out of [the property], for himself, not for his creditors, if there is anything to be salvaged." 2 H. Remington, Bankruptcy Law § 1147, at 629 (rev.ed.1956) (footnote omitted).

■ R & M and Valley claim that they, rather than the Brooks, are entitled to the $10,507 realized from the sale of the property. The basis for this contention is that R & M and Valley had liens on the Brooks' property with respect to which R & M had performed engineering services and Valley had furnished building materials.

It is true that under AS 34.35.070, one in the position of R & M and Valley literally "has a lien" on the property with respect to which the services were rendered and the supplies furnished at the land owners' request. But such a lien is not effective or valid until another provision of the lien statute has been complied with, e. g., that a written claim of lien has been filed for record with the recorder of the recording district in which the property is situated, within ninety days from completion of the service or delivery of supplies.[4]

R & M and Valley argue that such recording requirements are relevant and required only if there are competing liens, and since other lienholders who perfected their liens have been paid, there is no necessity for recording formal claims of lien as required by law. Such an argument has no merit. First of all, AS 34.35.070 states that one in R & M's and Valley's position, if they

---

1. AS 09.45.790 provides:
   *Lis pendens.* In an action affecting the title to or the right of possession of real property, the plaintiff at the time of filing the complaint, or afterwards, and the defendant, when affirmative relief is claimed, at the time of filing the answer, or afterwards, may record in the office of the recorder of the recording district in which the property is situated a notice of the pendency of the action, containing the names of the parties, and the object of the action or defense, and a description of the property affected in that district. From the time of filing the notice for record, a purchaser, holder of a contract or option to purchase, or encumbrancer of the property affected has constructive notice of the pend-ency of the action and of its pendency against parties designated by their real names.

2. The apparent cause of the Brooks' financial problems was a serious injury to Donald Brooks' back.

3. R & M and Valley submitted their claims to the trustee. Presumably they were compensated in part.

4. AS 34.35.070. This statute has since been revised to some extent. See Title 34, ch. 35, art. 2, in the 1979 Cumulative Supplement to the Alaska Statutes.

wish to make their lien effective, *"shall"* file a claim of lien within the designated period of ninety days. [Emphasis added.] Secondly, R & M's and Valley's position cannot be squared with our opinion in *H.A. M.S. Co. v. Electrical Contractors of Alaska, Inc.*, 563 P.2d 258 (Alaska 1977). In that case we reversed a superior court order foreclosing mechanic's and materialmen's liens because of the lienholders' failure to verify their lien claims by oath, as required by AS 34.35.070(c)(5). There, as here, the invalid liens were the only ones at issue; there was no competition with properly perfected liens.

The issue in *H.A.M.S.* was whether substantial compliance with subsection (c)(5) of AS 34.35.070 was sufficient to create a valid lien, 563 P.2d at 260, and neither the majority opinion nor the dissent suggested that the lien would be enforceable without compliance with that section. *H.A.M.S.* must govern here as well, where the noncompliance was more flagrant. Hence, we conclude that R & M and Valley did not have valid liens.

The requirement that one shall file for record his claim of lien before the lien becomes effective has reason to support it. Our discussion in *H.A.M.S.* reflects the need for this. There we said:

> We think the requirement of verification is reflective of the legislature's awareness that a claim of lien adversely affects the title to the property and its alienability; that the claim of lien can have an injurious impact on the credit of the owner of the property which is subjected to the lien; and that the claim of lien can be used as a vehicle to coerce settlement

from the owner of the property. In light of these important policy considerations there exists a reasonable basis for the legislature's determination that the significance of filing a lien claim be made clear to the lien claimant through the requirement of verification and the possibility of perjury prosecution for verifying a false lien claim.[5]

Similarly, we believe that "the significance of filing of a lien [must] be made clear to the lien claimant" through the requirement that a written claim of lien be recorded within ninety days after rendition of the services or furnishing of the supplies for which the liens are claimed. We conclude that R & M and Valley did not have valid and effective liens on the Brooks' property involved here.

■ We also find untenable R & M's and Valley's argument that their filing of actions against the Brooks and the filing of notices of *lis pendens* should be accorded the status of liens. AS 09.45.790 states only that a notice of *lis pendens* gives constructive notice to subsequent purchasers and encumbrancers that their interests may be affected by a pending action. The language of the statute simply cannot be stretched to support the position urged by R & M and Valley.[6]

■ R & M and Valley also argue that principles of equity were properly applied by the superior court in deciding this case in their favor. They state in their appellate brief:

> This action, unique as it is, requires the Court to look for guidance in all areas of creditor-debtor relationships in order to

---

5. *H.A.M.S. Co. v. Electrical Contractors of Alaska*, 563 P.2d 258, 263–64 (Alaska 1977). *See also Frontier Rock and Sand, Inc. v. Heritage Ventures, Inc.*, 607 P.2d 364 (Alaska 1980), where we stated:

> Moreover, the general philosophy of lien statutes is consistent with the system of distinct deadlines for lien filings and inconsistent with open-ended ones. That philosophy is that a materialman or workman may reach the property which he has benefited to satisfy his claim for the benefit even when there is no direct contractual relationship between

him and the owner of the property, and regardless of who the owner might be. However, because of the extensive uncertainty to titles that this broad remedy entails it has been thought necessary to construe time limitations for its exercise rather narrowly.

607 P.2d at 367.

6. The judgment lien statute, AS 09.30.010, is of no assistance to R & M and Valley. It clearly speaks of a court judgment or decree, and none was ever entered in either R & M's or Valley's civil action against the Brooks.

determine state law priority between these claimants under these facts but, not being a lien foreclosure action, the Court is not bound by lien statutes and decisions. This is not a case to foreclose a lien; this is a case to decide priority to specific property between an appellant debtor and appellee creditors.

They dismiss the Brooks' defense of discharge in bankruptcy by claiming that such a defense is inappropriate to a quasi-in-rem proceeding like interpleader.

We find this argument unpersuasive. A quasi-in-rem action depends on a valid underlying personal claim. F. James, Civil Procedure § 12.1, at 613 (1965). And in light of our determination that R & M and Valley were not lienholders, we must find that their claims were solely personal and were therefore discharged by the Brooks' bankruptcy. It may well be, as R & M and Valley assert, that after the referee's abandonment the Alaska court acquired jurisdiction over the property as though the property had never been before the bankruptcy judge. But such jurisdiction can extend only to claims directly against the property and not discharged by bankruptcy, i. e., valid liens.

We held in *White v. State ex rel. Block*, 597 P.2d 172 (Alaska 1979), that the superior court erred in setting creditor priorities on an equitable rather than statutory basis in the liquidation of an insolvent insurer. We wrote:

> The purpose of the federal Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate. . . .
> But equitable principles play a limited role in adjusting claims among creditors who have no statutory priority entitlement to liquidation assets. Subordination of claims of one general creditor to those asserted by other general creditors is within the general equity power of a court only where the claim to be subordi-

nated is acquired or asserted contrary to established equitable principles. . . . Fraud, unfairness, or breach of the rules of "fair play" is essential to a decision to subordinate. . . . A perceived inequity resulting from the valid claim of an innocent party against the assets of a bankrupt will not suffice. . . . Absent inequitable conduct of a claimant, a court is without power to consider the general requirements of equity in setting priorities among creditors . . . . .

*Id.* at 175–76 (footnote omitted). R & M and Valley argue that this language is irrelevant here, where the dispute is between creditors and bankrupts. We cannot agree. We see no valid reason not to apply here our rationale in *Block*, that, absent inequitable conduct, equitable considerations should play no part in bankruptcy proceedings. No allegations of inequitable conduct are made here. Therefore, "equitable principles" may not be used in this case to override the rule that property abandoned by the trustee returns to the debtor free of unsecured claims.[7]

The judgment of the superior court is REVERSED, and the case REMANDED for entry of judgment in favor of Donald and Lois Brooks.

BOOCHEVER, J., not participating.

---

7. R & M and Valley cite *Block*, 597 P.2d 175 n.13, which quotes some broad language from Remington's bankruptcy treatise about a bankruptcy court's power to apply considerations of equity in order to avoid unjust enrichment. But the following sections of the treatise indicate that the court's power is narrowly defined. *See* 6 H. Remington, Bankruptcy Law §§ 2875–2887 (5th ed. 1952).