**In re Eugene V. MILLER and Frances L. Miller, Debtors.**

**No. 82–01212–SW–13.**

United States Bankruptcy Court, W.D. Missouri, S.D.

April 12, 1984.

Donald R. Duncan, Springfield, Mo., for creditors Sears.

Gary A. Love, Springfield, Mo., for debtors.

Rick Fink, Trustee.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In February of 1976 debtors decided to move from Alaska. They sold their house, which contained Eugene Miller's law office, to a corporation owned by clients of Mr. Miller, Dallas and Sara Sears. After extensive negotiations the Sears took possession of the property in November of 1976. In January of 1977, the Sears became dissatisfied with the sale and wrote debtors asking to void the deed. Debtors declined and litigation followed.

Sears abandoned the property in late August 1978. At that time debtors were living in Missouri where they had purchased a large farm. On September 1, 1978, debtors quit-claimed the Alaska property to their son and daughter-in-law who agreed to assume payments to SBA which held a security interest in the property. In addition, the son and daughter-in-law gave Debtors a second deed of trust on the property to secure a $300,000 obligation.

On December 15, 1978, a jury found in favor of the Sears on their claim of breach of fiduciary duty by debtors. On January 9, 1979, the Sears recorded a *lis pendens*. The trial court shortly thereafter entered a judgment rescinding the sale, awarding debtors a small money judgment in restitution and awarding Sears costs and attorney fees. Both parties appealed but neither filed a supersedeas bond.

The quit claim deed, assumption agreement and deed of trust were recorded on June 26, 1980. On March 11, 1982, the Alaska Supreme Court ruled the appeal, sustaining rescission, reversing the money judgment and remanding to the trial court for entry of the amended judgment. *Miller v. Sears*, 636 P.2d 1183 (Alaska 1981). The trial court entered a judgment *nunc pro tunc* granting the Sears a money judgment in the sum of $67,447. This judgment was recorded as a lien on March 16, 1982.

Shortly thereafter debtors filed for bankruptcy under Chapter 13 in this district. Sears asserted that they had a secured claim by reason of the *nunc pro tunc* judgment and the lien filing. Debtors dispute the nature of the claim, saying that the lien attached to no property which they owned at the time it was filed. Evidence was heard and the parties have filed a stipulation of material facts. The Court finds that there are no disputes of material fact and that the only issues are questions of law.

## I

Issues concerning title and rights to and in real property are governed by the law of the state where the property is located. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *In re Duracraft Products, Inc.*, 26 B.R. 92 (Bkrtcy.S.D. Ohio 1982); *Matter of Holiday Meat Packing, Inc.*, 30 B.R. 737 (Bkrtcy.W.D.Pa.1982); *In re Marriage of Breen*, 560 S.W.2d 358 (Mo.App.1977). This Court is bound to follow state law. *Harkins v. Wyrick*, 589 F.2d 387 (8th Cir. 1979). The law of Alaska controls here.

Section 09.30.010 of the Alaska Statutes establishes the requirements necessary to create a judicial lien on real property.

"A certified copy of the judgment or decree of a court of this State or a court of record of the United States upon which execution may issue, the enforcement of which has not been stayed, may be recorded with the recorder of a recording district. From the recording, the judgment or decree becomes a lien upon the real property of the defendant which is in the recording district, which is not exempt from execution, and which is owned by him at the time [of recording] or acquired by him afterward but before the lien expires ...".

The Sears did not record their judgment against debtors until March 16, 1982. Thus, according to Alaska law, any real property owned by debtors on that date or thereafter acquired which was also situated within the recording district would be subject to the Sears' judicial lien.

■ Section 09.30.020 of the Alaska Statutes outlines the priority of liens of judgments and provides that:

"A conveyance of real property or interest in real property is void against a judgment lien that is recorded before the conveyance is recorded".

There is no dispute that debtors quitclaimed their interest in the Alaska property to Norman and Sharon Miller and that the conveyance was recorded in 1980, almost two full years before the judgment was recorded as a lien.

In *Brooks v. R & M Consultant, Inc.*, 613 P.2d 268, 269 (Alaska 1980) the court held that although an Alaska Statute "literally" provided a lien to vendors when those vendors provided services or supplied to a landowner at the landowner's request, the lien was "*not effective or valid* until another provision of the lien statute had been complied with". This other provision required the filing by the vendors of a written claim of lien (within 90 days of delivery of the supplies or service) with the recorder of the recording district in which the property was situated. Absent this recording there was no lien.

At the time the property was abandoned by Sears, debtors gave a quit claim deed. Of course they gave no title because Sears and their corporation held title. But when the judgment of rescission was entered and not stayed, title reverted to debtors and in a scintilla of time was vested in the son and daughter-in-law, grantees of the quit claim deed. They took subject to the *lis pendens* but when the rescission order was affirmed on appeal the cloud created by the *lis pendens* was lifted and good title was held by the son and his wife.

II

Section 09.30.010 of the Alaska Statutes clearly states that the judgment lien runs from the date of recording against real property of the defendant "in the recording district, ... not exempt ... and ... owned by him at the time" of recording or acquired thereafter. Here debtors did not own the Alaska property at the time the lien was recorded. Sears argue, however, that the *lis pendens* was recorded prior to the conveyance being recorded and the 1982 judgment lien recording should relate back to that filing.

Section 09.45.790 of the Alaska Statutes authorizes the filing of a *lis pendens* and provides that:

"In an action affecting the title to or the right of possession of real property, [a party] ... may record in the office of the recorder of the recording district in which the property is situated a notice of the pendency of the action ... From the time of filing the notice for record, a purchaser ... has constructive notice of the pendency of the action".

■ But the Supreme Court of Alaska has held that the filing of a *lis pendens* notice under the statute does not create a lien. *Brooks v. R & M Consultants, Inc.*, supra at 270. The language of the judgment lien section, AS 09.30.010, clearly contemplates prospective effect. Filing of the judgment itself is the operative act. Here Sears had a money judgment in 1979 which they could have filed as a lien to which the *nunc pro tunc* order could relate. They did not. The effect of entering the order *nunc pro tunc* was to permit a calculation of interest from the date of the original judgment. The *nunc pro tunc* order does not cure the failure to file the judgment as a lien at the time it was entered—in January of 1979. And Sears did have a money judgment they could have recorded.

This Court cannot use its equitable power to establish the claim. "Equitable principles play a limited role in adjusting claims among creditors who have no statutory priority entitlement to liquidation assets". *White v. State ex rel. Block*, 597 P.2d 172,

174 (Alaska 1979). In that case the trial court established certain priorities among general creditors. The Supreme Court reversed pointing out that no statute or creditor conduct justified subordination within the class.

■ Here the Sears ask this Court to give them a status which they may only obtain by performing certain acts which they did not do. In light of the statutory requirement of recording to attain a priority position, the Court cannot give that status by ignoring their failure to record.

### III

Even though debtors conveyed the property only after Sears abandoned it, they did so at a time when they had no title and were involved in unresolved litigation where they had exposure to substantial money damages. The transaction is suggestive of a conveyance in fraud of creditors.

Section 34.40.010 of the Alaska Statutes deals with fraudulent conveyances and provides in part that:

> "A conveyance or assignment, in writing or otherwise, of an estate or interest in lands, ... made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands or a bond or other evidence of debt given, action commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed, or defrauded is void".

Under Alaska law the existence of fraudulent intent is a question of fact which will not be presumed. Section 34.40.090, Alaska Statutes; *Blumenstein v. Phillips Insurance Center, Inc.*, 490 P.2d 1213 (Alaska 1971). Cf. Section 428.020, R.S.Mo.1969. Alaska courts follow the analysis commonly described as "badges of fraud".

> "The badges of fraud ... in terms of long-recognized indicia of fraud are: (1) The consideration ... is inadequate ... (2) The transfer of the property was in anticipation of a pending suit ... (3) The

transferor-debtor was insolvent ... (4) There was a failure to record the instrument within a reasonable length of time ... (5) The conveyance was a transfer of all or substantially all of the debtor's property ... (6) The retention of possession of the premises by the grantor from the date of the execution of the deed ... stands unexplained ... (7) The transfer so completely depleted the assets of [the defendant] that his creditor, the plaintiff, has thereby been hindered and delayed in recovering any part of his judgment ... (8) The relationship of the parties becomes an additional badge of fraud when there also appear other circumstances which of themselves incite distrust and suspicion ...." *First National Bank of Fairbanks v. Enzler*, 537 P.2d 517, 522 (Alaska 1975).

The analysis is also followed in Missouri. See *Cohoon v. Cohoon*, 627 S.W.2d 304 (Mo.App.1981).

In *Enzler*, the Court noted the existence of several badges of fraud, including the fact that Mr. Enzler, the person accused of the fraudulent transfer, was left insolvent following the transfer, a creditor was possibly going to seek a deficiency judgment against Enzler, there was nothing in the record to establish that the transfer was supported by adequate consideration and the transfer was made to Enzler's wife, a relationship "generally considered one which would excite suspicion in this context". *First National Bank of Fairbanks v. Enzler*, supra at 524–25. Yet the court affirmed the lower court's finding that Enzler's transfer had not been in fraud of creditors because there existed an "adequate explanation for their [badges of fraud] presence".

■ The evidence shows that the consideration for the transfer was adequate, that debtors were not rendered insolvent by the transfer, that they did not retain possession of the premises after the transfer and that the relationship in and of itself does not cloud the transaction. Cf. *Hale v. Hummel*, 64 F.2d 210 (8th Cir.1933). On the other hand the transfer was made at a

time when debtors were in litigation, there was delay in recording and the conveyance did transfer all of the real property owned by debtors in Alaska. But the Sears could have attached the money being paid under the note and deed of trust had not bankruptcy intervened. The Court concludes that it is the bankruptcy filing which hindered collection of the debt, although had the bankruptcy not been filed, the conveyance would have prevented the Sears from executing against the real property.

Debtors contend that they transferred the property because they were living in Missouri and could not manage it at that distance. But at the time they conveyed, they had no title and only possession. The conveyance by quit claim was not necessary to authorize someone to care for the property. As the facts are stated, if the Sears had recorded their judgment in early 1979, it would have had priority over the quit claim conveyance recorded in 1980. And, of course, Sears could have executed against the real estate until the quit claim deed was recorded.

While the Court has concluded that a conveyance was unnecessary to authorize someone to look after the property, it is also true that the quit claim conveyed nothing at the time it was delivered. If there had been no rescission granted by the court, the quit claim would have never conveyed anything. After title vested in the son and his wife in early 1979, execution and recording were still available to Sears until June of 1980. Even though the owner of property is in litigation not every conveyance of property held by such an owner is fraudulent against a subsequent judgment creditor. Here the conveyance did not cut off the rights of the Sears until well over a year after they obtained a judgment and almost two years before the *nunc pro tunc* entry. The Court holds as a matter of Alaska law that the conveyance was not fraudulent as to the Sears.

Debtors propose to pay Sears in full over five (5) years but schedule the debt at only $67,000 approximately. In view of the Court's allowance of a higher amount, the plan will not pay out within the statutory limits. Debtors are granted to May 4, 1984, to file an amended plan and to serve a copy upon counsel for Sears.

The Court finds that judgment obtained by the Sears is not a lien against the Alaska property. The recording in 1982 does not relate back to the filing of the lis pendens. The filing of the *lis pendens* does not create a lien. The Sears have an allowed unsecured claim in the sum of $66,-341.36 with interest to the date of the filing of this case in bankruptcy, together with other allowances of judgment and interest thereon.