Donnald R. REYNOLDS and Parris A. Reynolds, Appellants,

v.

The SISCO GROUP, INC., Estate of Eldridge C. Sisson, and Virginia Erickson, Appellees.

No. S–10266.

Supreme Court of Alaska.

May 9, 2003.

Barton M. Tiernan, Esq., Law Offices of Barton M. Tiernan, Anchorage, for Appellants.

Allan E. Curlee, Allan Curlee, P.C., Fairbanks, for Appellee Estate of Eldridge C. Sisson.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I.  INTRODUCTION

Reynolds tried to execute on a money judgment against Sisson by seizing one of three vans Sisson had fraudulently transferred to a friend, Erickson, and by attaching funds owed by a third person, Frye, to whom Erickson had sold the other two vans after receiving them from Sisson. As Reynolds prepared to sell the seized van and either shortly before or after he attached the funds from the other vans' sale, Sisson died. Alaska's probate code bans judgment creditors from attempting new executions or levies against any property of a deceased judgment debtor's estate. Relying on this prohibition, the superior court ordered the seized van and attached funds to be restored to Sisson's estate. We reverse as to the seized van, finding the probate code's ban inapplicable, since Reynolds perfected his security interest in the van by seizing it before Sisson died. As to the estate's right to the sale funds, we hold that the issue turns on whether Reynolds perfected his security interest by serv-

ing the writ of attachment on Frye before Sisson died. Because the record does not disclose the writ's date of service, we vacate the summary judgment as to the funds and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

In April 1999 the superior court entered a default judgment against Eldridge Sisson and his company, Sisco Group, Inc. (Sisson), awarding Donnald and Parris Reynolds (Reynolds) over $400,000 in tort damages. Reynolds recorded the judgment a week later and began collecting the judgment by obtaining writs of execution and attempting to seize various items of Sisson's property, including three Ford vans. In July Reynolds managed to seize one of the vans.

Meanwhile, however, attempting to avoid execution, Sisson had transferred title to all three vans to a friend named Virginia Erickson; in early June Sisson had also arranged for Erickson to sell two of the vans to a third party, Cameron Frye, for $47,500. The sale contract between Erickson and Frye, an arm's-length transaction, required Frye to pay Erickson a down payment of $5,000, forty-eight monthly installments of $1,027.50, and four $5,000 balloon payments.

Upon learning of this sale, Reynolds asked the court to issue an order enjoining any further transfer of Sisson's property and directing any persons owing money to Sisson to pay directly to the court. The superior court granted the request and issued the writ of attachment so ordering on July 7, 1999. On July 23 Reynolds filed a supplemental action against Sisson and Erickson, seeking an order nullifying Sisson's fraudulent transfers to Erickson and requiring Frye to pay his monthly installments directly to the court. After consolidating the supplemental action with the original case, the superior court issued a prejudgment writ of attachment on July 29, 1999, ordering Frye to make all further payments to the court. The record does not disclose the exact date that Frye received this order, but he evidently started sending his monthly payments to the court in August or September.

On August 8, 1999, Sisson died in an accident.

Several months later, Reynolds moved for summary judgment on his fraudulent conveyance complaint, asking the court for title to the van he had seized in July so that he could sell it in partial satisfaction of his judgment; he also asked the court to award him the right to collect Frye's installments on the other two vans. The personal representative for Sisson's estate intervened and responded. While acknowledging that Sisson's conveyances had been fraudulent, the estate opposed Reynolds's request for the property, arguing that the sale proceeds from Frye and the title to the unsold van should instead be restored to the personal representative for distribution as part of Sisson's estate.

Superior Court Judge Brian C. Shortell agreed with the estate and issued a summary judgment ordering that the van and the funds be held in the court registry for distribution as part of Sisson's estate. After the parties stipulated that Judge Shortell's order disposed of all triable issues, Superior Court Judge Stephanie E. Joannides, who had replaced Judge Shortell on the case, entered a final judgment incorporating the substance of the summary judgment order.

Reynolds appeals, arguing that the superior court erred in awarding the disputed property to the estate.

## III. DISCUSSION

The controversy in this appeal centers on AS 13.16.505, which prohibits judgment creditors from executing or levying on property of a deceased debtor's estate but nonetheless permits the continued enforcement of liens:

No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or a personal representative, but this section shall not be construed to prevent the enforcement of mortgages, pledges, or liens upon real or personal property in an appropriate proceeding.

Alaska drew this statute from § 3–812 of the Uniform Probate Code, a law we described in *Lundgren v. Gaudiane* as establishing that the "death of the judgment debtor termi-

nates the possibility of issuing a valid writ of execution upon a money judgment." [1]

In *Sheehan v. Estate of Gamberg,* we declared that "the purpose of AS 13.16.505 is to freeze the status of all claims at the death of the debtor in order to provide for the orderly administration of the estate." [2] We observed that this purpose harmonizes with the purpose of Alaska's devolution statute,[3] which passes a decedent's property "to his heirs or devisees immediately upon [ ] death, subject to the rights of creditors." [4] Given this immediate transfer of property rights, we explained, "a judgment creditor of a decedent cannot create a new property interest, such as a judgment lien, in the decedent's estate since title is in the heirs or devisees." [5]

In the present case, Reynolds insists that AS 13.16.505's prohibition against new executions and levies does not prevent him from using Sisson's vans as a source for satisfying his judgment. Before Sisson died, Reynolds points out, one of the vans had already been seized under a writ of execution; and a prejudgment writ of attachment had already issued directing Frye to pay to the court all future installments falling due on the other two vans. Because seizing the first van completed its execution and the prejudgment writ of attachment acted as a lien on the remaining funds owed by Frye, Reynolds maintains, his interest in using this property to secure his judgment was already perfected by the time Sisson died. And because AS 13.16.505 only prohibits new executions or levies and expressly allows continued en-

forcement of existing liens after a judgment debtor dies, Reynolds reasons, nothing in the statute or in our cases interpreting it precludes him from satisfying his judgment by enforcing his established interests in the van and Frye's installments.

In response, the estate cites *Sheehan* and *Lundgren* and insists that, as interpreted by these cases, AS 13.16.505 effectively froze the status of all claims pending against Sisson at the time of his death, thereby requiring his interest in the vans to be treated as the estate's property:

> What is in dispute is the appropriate disposition of the van still titled to Erickson and the proceeds of the sale [of the other two vans]. Based on AS 13.16.505 and [*Lundgren* ], the Personal Representative asserts that the property and proceeds of sale should be returned to her to allow her to properly carry out her duties[.]

But the estate's argument is unpersuasive.[6] In providing that "no execution may issue upon nor may any levy be made against any property of the estate," AS 13.16.505's plain language makes two conditions necessary to trigger its prohibitions after a judgment debtor dies: (1) some form of execution or levy must be issued or made; and (2) the execution or levy must be directed against property of the estate. Our cases interpreting this statute reinforce its plain meaning. In *Sheehan,* for example, we noted the statute's purpose of ensuring that "a judgment creditor of a decedent cannot create a *new* property interest" after title passes to heirs

**1.** *See Lundgren v. Gaudiane,* 782 P.2d 285, 288 (Alaska 1989) (quoting S. RIESENFELD, CREDITORS' REMEDIES AND DEBTORS' PROTECTION, 84–85 (3d ed.1979) (citations omitted)).

**2.** *Sheehan v. Estate of Gamberg,* 677 P.2d 254, 256–57 (Alaska 1984) (citing *In re Hogan's Estate,* 229 Wis. 600, 282 N.W. 5, 9 (1938)).

**3.** *See* AS 13.16.005 (devolution statute); *see also* WRIGHT, UNIFORM PROBATE CODE PRACTICE MANUAL § 12.1 (1972) (stating that under the UPC's definition of devolution, "Title to a decedent's property, both real and personal, passes to his heirs ... or to the devisees ..., immediately upon death").

**4.** *Sheehan,* 677 P.2d at 257–58.

**5.** *Id.* at 257. More recently, in *Lundgren v. Gaudiane,* we confirmed *Sheehan's* reading of AS

13.16.505, emphasizing that AS 13.16.505 prevails insofar as it conflicts with language in AS 09.35.060 that would seemingly allow execution on a judgment after the judgment debtor dies. *Lundgren,* 782 P.2d at 288 (confirming *Sheehan's* holding and resolving conflict between AS 13.16.505 and AS 09.35.060, which provides: "If the judgment debtor dies after judgment, execution may be issued on the judgment in the manner and with the effect as if the debtor were still living, except as provided in AS 13.16.505.").

**6.** Because this appeal arises on undisputed facts from a summary judgment order and because Reynolds's argument raises a pure question of law, we decide the case *de novo* by applying our independent judgment. *Guin v. Ha,* 591 P.2d 1281, 1284 (Alaska 1979).

or devisees; yet at the same time we recognized that the heirs and devisees take the decedent's property "subject to the rights of creditors" existing at the time of death.[7] Similarly, in *Lundgren,* we described AS 13.16.505 as a provision that "terminates the possibility of *issuing* a valid writ of execution upon a money judgment." [8]

Here, then, the estate's claim that it should receive the disputed property so that the personal representative can ensure an orderly administration of the estate's assets begs the two critical questions posed by the statutes' requirements: would allowing Reynolds to recover his judgment by selling the seized van and collecting Frye's installments entail the creation of a new property interest (that is, an interest that did not exist at the time of Sisson's death)? And if so, does the new interest that Reynolds seeks to assert involve property that belongs to the estate (that is, property devolving to Sisson's heirs and devisees upon Sisson's death)?

■ As to the seized van, at least, the answer to the first question is decidedly, "No." Under Alaska law, a writ of execution directs a judgment creditor to levy on—or seize—the property that is subject to the writ.[9] Until the levy occurs, "the property is not affected by the execution." [10] But once the property is levied upon, it serves as a specific source for satisfaction of the judgment,[11] and the judgment creditor thus enjoys a lien-like interest in collecting against the particular property seized.[12] By seizing the van under a writ of execution, then, Reynolds secured a cognizable interest in satisfying his judgment against that particular item of property.[13] And because the van's levy undisputedly occurred before Sisson died, this interest cannot properly be regarded as the kind of newly created interest forbidden under AS 13.16.505. To the contrary, whatever residual right Sisson retained in the seized van when he died devolved to his heirs and devisees subject to Reynolds's established interest in collecting against that property.

■ Whether Reynolds has the right to collect Frye's installment payments presents a cloudier picture. Because the record fails to disclose exactly when Reynolds served the prejudgment writ of attachment on Frye, we cannot determine whether the installment payments were attached before Sisson died. Reynolds argues that this is irrelevant. He maintains that the prejudgment writ of attachment itself amounted to a lien upon issuance, regardless of whether or when it was served. In support of this argument, Reynolds cites Civil Rule 89's opening language, which authorizes claimants to apply for prejudgment writs of attachment "as security for satisfaction of a judgment that may be recovered." [14] But the rule's broad statement describing a writ of attachment's purpose begs the narrower question of precisely when a writ of attachment achieves its purpose of providing "security for satisfaction of a judgment." Nothing in the statement of purpose suggests that a writ of attachment creates a security interest before being perfected by service. And as we explain below, Alaska's probate code definitively hinges the estate's right to Frye's payments on when Reynolds perfected his security interest.

As already mentioned, AS 13.16.505 prohibits a new execution or levy after a judgment debtor dies only if the execution or levy

---

7. *Sheehan,* 677 P.2d at 257 (emphasis added).

8. *See Lundgren,* 782 P.2d at 288 (quoting S. RIESENFELD, CREDITORS' REMEDIES AND DEBTORS' PROTECTION, 84–85 (3d ed.1979) (citations omitted) (emphasis added)).

9. AS 09.35.100; AS 09.35.110; Alaska R. Civ. P. 69(f).

10. AS 09.35.110.

11. *See* AS 09.35.030; *cf.* AS 09.40.010(a) (allowing attachment of property "as security for the satisfaction of a judgment").

12. *See* AS 09.35.030; *cf. Alaska Nat'l Ins. Co. v. Jones,* 993 P.2d 424, 427–28 (Alaska 1999) (construing a statute to give rise to an equitable lien because it established "an interest in and a right to seek reimbursement from" a particular source).

13. *Cf.* AS 09.35.160 (giving a judgment creditor and the process server who levies on property under a writ of execution full control over the timing of a sale in satisfaction of the judgment).

14. *See* Alaska R. Civ. P. 89(a).

is directed "against any property of the estate." [15] A writ of attachment is a type of levy. The pivotal questions presented, then, are whether Frye's future payments for the two vans can be considered "property" and, if so, whether these payments became "property of the estate" under AS 13.16.505.

Alaska's probate code adopts an expansive view of "property," defining the word to mean "anything that may be the subject of ownership, and includes both real and personal property and an interest in real or personal property." [16] The contractual right to payments from Frye certainly is something that "may be the subject of ownership" so it is unquestionably property. We must thus proceed to ask whether this contractual right became property of the estate. Another probate code provision, AS 13.16.385, squarely controls this issue, unequivocally granting personal representatives exclusive power to prosecute claims on behalf of unsecured creditors for any unencumbered property transferred by a decedent through "void or voidable" means:

> The property liable for the payment of unsecured debts of a decedent includes all property transferred by the decedent by any means which is in law void or voidable as against creditors, and subject to prior liens, the right to recover this property, so far as necessary for the payment of unsecured debts of the decedent, is exclusively in the personal representative. [17]

By giving Sisson's personal representative exclusive authority to maintain an action to set aside the allegedly fraudulent chain of conveyances unless Frye's payments were "subject to prior liens," this provision effectively recognizes that the right to the outstanding payments would pass to the estate if Reynolds's claim against the funds remained unperfected—that is, if the writ of

attachment remained unserved—when Sisson died. [18]

Here, before Sisson died he transferred all three of his vans to Erickson, who titled them in her name. By the time of his death, two of the three—the two that remained unseized—had been further transferred from Erickson to Frye in return for his promise to make forty-eight monthly payments of $1,027.50. Reynolds had filed a complaint asserting that these transactions were fraudulent and were therefore voidable; and he had obtained a prejudgment writ of attachment. But whether the writ was served on Frye before Sisson died is unclear on the current record and was not decided below. Because the record fails to disclose when the writ was served, entry of summary judgment on this point was inappropriate. Accordingly, we must set aside the summary judgment with respect to Frye's payments and remand this case for further proceedings to determine if the writ of attachment was served before Sisson's death.

## IV. CONCLUSION

We REVERSE the superior court's judgment with respect to the seized van and direct entry of judgment in Reynolds's favor; we VACATE the judgment with respect to Frye's payments and REMAND for further proceedings.

---

15. AS 13.16.505.

16. AS 13.06.050(39). This definition comports with the definition set out in Uniform Probate Code section 1–201(33), which states: " 'Property' includes both real and personal property or any interest therein and means anything that may be the subject of ownership."

17. Cf. Goldstein v. Prien, 143 Cal.App.2d 123, 299 P.2d 344, 346 (1956) (recognizing under analogous section of California Code "that the

right to recover property conveyed by a decedent in fraud of creditors is an asset of his insolvent estate and that the executor or administrator is a trustee thereof for the benefit of creditors.").

18. Since AS 13.16.505 prohibits liens from being perfected after the date of death, the term "prior liens" in AS 13.16.385 must refer to liens on voidably transferred property or proceeds thereof perfected before the date of death.