*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA USA FEDERAL CREDIT UNION, | ) ) ) | Supreme Court No. S-18515 |
| Petitioner, | ) ) | Superior Court No. 3AN-21-05226 CI |
| v. | ) ) | O P I N I O N |
| THE SAYER LAW GROUP, P.C.; STATE OF ALASKA, DEPARTMENT OF REVENUE, CHILD SUPPORT SERVICES DIVISION; JANELLE EARLS, in her official capacity as Acting Commissioner of the Department of Revenue; TROY R. LEWIS; and SHANDA M. LEWIS, | ) ) ) ) ) ) ) ) ) ) | No. 7796 – November 28, 2025 |
| Respondents. | ) ) | |

Petition for Hearing from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge, on appeal from the District Court of the State of Alaska, Anchorage, Brian K. Clark, Judge.

Appearances: Robert A. Royce, Jermain Dunnagan & Owens, P.C., Anchorage, for Petitioner. Brian G. Sayer, The Sayer Law Group, P.C., Waterloo, Iowa, for Respondent The Sayer Law Group, P.C. Jonathan P. Clement, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for State Respondents. No appearance by Respondents Troy R. Lewis and Shanda M. Lewis. Andrew Erickson and Bruce Moore, Landye Bennett Blumstein LLP,

Anchorage, for Amici Curiae Alaska Bankers Association, Alaska Credit Union League, and Credit Union National Association.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I.    INTRODUCTION

After the sale of real property at a nonjudicial foreclosure, a credit union asserted that because it was the earliest recorded lienholder, it should be the first to receive surplus funds from the sale under the priority established by AS 34.20.080(f)(2). However, the Department of Revenue, Child Support Services Division (CSSD) asserted that it had priority to receive the funds by virtue of a child support withholding order it issued under AS 25.27.250 and a lien it held pursuant to AS 25.27.230, even though both were created later than the credit union's lien. The district court agreed with CSSD's interpretation of the statutes; the superior court affirmed on appeal.

We conclude that AS 25.27.250 has no applicability here because it requires a third party to withhold and deliver property only when it is "due, owing, or belonging" to a child support obligor. Where the property subject to a withholding order is not "due, owing, or belonging" to the obligor, a withholding order has no effect. Further, we hold that the prohibitions in AS 25.27.230(d) apply to judgment lienholders in nonjudicial foreclosures, effectively providing a CSSD lien priority over other judgment liens, including those recorded prior to the CSSD lien. Accordingly, we affirm the superior court's decision affirming the district court's judgment.

## II.   FACTS AND PROCEEDINGS

### A.    Facts

The material facts of this case are not disputed. Alaska USA Federal Credit Union (Alaska USA) recorded a judgment lien for $32,693.42, plus interest, against Troy Lewis in January 2017. Pursuant to AS 25.27.230(d), CSSD subsequently

asserted and recorded a child support lien for $14,241.35 against the real and personal property of Lewis in September 2017.[1]

Approximately three months later the Sayer Law Group, P.C. (Sayer Law), acting as trustee, commenced a nonjudicial foreclosure on a deed of trust encumbering real property owned by Troy and Shanda Lewis in Eagle River. The beneficiary of the deed of trust was Wells Fargo Bank, N.A. (Wells Fargo), while the Lewises were the grantors. The deed of trust was recorded in December 2010 and the assignment of the beneficial interest to Wells Fargo was recorded in March 2015, well in advance of the liens filed by Alaska USA and CSSD.

Sayer Law sold the property for $168,000 at a nonjudicial foreclosure sale in April 2018 and paid the outstanding balance owed to Wells Fargo on its deed of trust, leaving a surplus of $34,590.31. Sayer Law notified junior interest holders, including Alaska USA, CSSD, and Lewis, that surplus proceeds would be "paid in order of priority." Alaska USA submitted a claim for $38,783.68, CSSD claimed $22,186.56,[2] and Troy Lewis claimed any remaining surplus.

Sayer Law initially indicated that it intended to distribute the entirety of the surplus to Alaska USA because it had "the first recorded Judgment Lien." Upon receipt of the proposed distribution, CSSD sent Sayer Law a letter stating that it was asserting its lien against Lewis's property and that, under AS 25.27.230(d), the surplus funds "must first be distributed to CSSD for payment of Mr. Lewis' child support arrears."[3] In the letter, CSSD also stated that AS 25.27.230 granted CSSD liens special

---

[1]    CSSD is authorized to "establish, enforce, and administer child support obligations administratively." AS 25.27.020(a)(4).

[2]    CSSD's claim increased from its original lien amount because Lewis had an ongoing child support obligation of $1,830 per month.

[3]    CSSD asserted its interest "specifically" against "the surplus funds being held from the foreclosure sale." CSSD did not assert an interest against any funds that had already been used to satisfy the mortgage.

protections and referenced the statutory language in AS 25.27.230(d) prohibiting the transfer of property without a release from CSSD or a court order finding there is no longer a child support debt. The letter further advised that CSSD would be "separately sending . . . a withholding order demanding that the payment be made to CSSD." The following day, CSSD issued a child support withholding order under AS 25.27.250, directing Sayer Law to deliver $25,428.20 to CSSD.

Sayer Law complied with CSSD's request, first distributing the funds necessary to satisfy the agency's lien. Then the trustee sent a check to Alaska USA for $9,162.11. In the accompanying letter, Sayer Law acknowledged that Alaska USA's lien was recorded earlier, but the trustee maintained that CSSD's lien had priority under AS 25.27.230(d). Alaska USA returned the check to Sayer Law.

## B. Proceedings

Alaska USA filed a complaint in the district court seeking $34,590.31 in damages, alleging that Sayer Law breached a fiduciary duty to disburse the surplus proceeds under the priority established by AS 34.20.080(f)(2), which obligates the trustee to distribute proceeds of a nonjudicial foreclosure sale "according to the priority of the recorded interest." Sayer Law filed a counterclaim for interpleader and a third-party complaint against CSSD. Alaska USA and CSSD filed cross-motions for summary judgment. In its motion CSSD argued that both its child support lien and its withholding order had priority over Alaska USA's lien, despite the lien having been recorded later and the withholding order having been issued after the foreclosure sale. First, the agency argued that the language of AS 25.27.230(d), legislative amendments to the Social Security Act, an Alaska Attorney General's Opinion, and precedent from other jurisdictions all supported a conclusion that child support liens have priority over other competing liens. Furthermore, CSSD argued that its withholding order had priority because AS 25.27.250(i) prevailed over the priority established by AS 34.20.080(f)(2) in nonjudicial foreclosure proceedings.

Alaska USA argued in its summary judgment motion that AS 34.20.080 requires that proceeds from a foreclosure sale must be distributed according to priority of the recorded interests, and AS 09.30.020 provides that earlier recorded judgment liens have priority over those recorded later. Thus, Alaska USA reasoned that its earlier recorded judgment lien should have been satisfied before CSSD's later recorded lien. Alaska USA also argued that AS 25.27.250(i) does not allow CSSD's withholding order to attach to the disputed funds, as those funds were not "due, owing, or belonging to the debtor."

The district court granted CSSD's summary judgment motion and denied Alaska USA's. The court concluded that "the specificity of AS 25.27.230(d)(1) and (2) and AS 25.27.250(i) will control over the more general statute" establishing priority, AS 09.30.020. It determined that CSSD's withholding order had priority over Alaska USA's judgment lien, even though Alaska USA's judgment lien was recorded earlier, and Lewis had "an interest in the funds from the surplus of the sale," such that AS 25.27.250 applied to the surplus funds. Furthermore, the court quoted the language of AS 25.27.230(d)(1) and (2), noting that "[i]f not outright explicit, this provision . . . strongly implies that CSSD liens have priority over all other liens unless the obligor does not owe child support."

Alaska USA appealed to the superior court, restating the same arguments it made in district court. CSSD argued that the district court's decision should be upheld with regard to both AS 25.27.250(i) and AS 25.27.230(d), reiterating that prioritization of Alaska USA's lien based solely on the fact it was recorded earlier "ignores the fact that child support liens have special protections not afforded to ordinary liens." While the superior court acknowledged CSSD's argument under AS 25.27.230(d), the court based its decision on AS 25.27.250(i) alone. The superior court, echoing the district court, concluded that AS 25.27.250(i) is "narrower and more specific, intending to modify [the] general rule" set out in AS 34.20.080(f)(2). It concluded that the

general/specific canon of statutory construction,[4] combined with a plain reading of the statutory text, meant CSSD's interest was "intended to reign supreme over all others."

Alaska USA filed a petition for hearing, which we granted.[5]

## III.   STANDARD OF REVIEW

"In an appeal from a judgment of a superior court acting as an intermediate court of appeal, we independently review the judgment of the district court."[6]  "We review questions of statutory interpretation de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' "[7]

## IV.   DISCUSSION

The statutes at issue in this appeal represent competing interests.  On one hand is the societal interest of ensuring that parents meet their support obligations,[8] which is promoted by CSSD's primary collection powers:  issuing orders to withhold and deliver property under AS 25.27.250 and asserting liens under AS 25.27.230.[9]  On the other hand is the financial interest of creditors, such as judgment lienholders, which

---

[4]     The general/specific canon of statutory construction holds that "a more specific statute must prevail over a general one." *Nat'l Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 817 (Alaska 1982).

[5]     The Alaska Bankers Association, Alaska Credit Union League, and Credit Union National Association filed a joint amicus brief.  We thank the amici curiae for their helpful briefing.

[6]     *Ray v. Draeger*, 353 P.3d 806, 810 (Alaska 2015) (quoting *Pouzanova v. Morton*, 327 P.3d 865, 867 (Alaska 2014)).

[7]     *Angelica C. v. Jonathan C.*, 459 P.3d 1148, 1155 (Alaska 2020) (quoting *Schacht v. Kunimune*, 440 P.3d 149, 153 (Alaska 2019)).

[8]     *See State, Dep't of Revenue, Child Support Enf't Div. v. Deleon*, 103 P.3d 897, 900 (Alaska 2004) ("Alaska Statute 25.27 has the purpose of ensuring that parents meet their support obligations.").

[9]     *See Koss v. Koss*, 981 P.2d 106, 107-08 (Alaska 1999).

is promoted by the well-established expectations of priority for satisfaction under AS 34.20.080(f).[10]

Although there are substantial competing interests, our interpretation of the statutes aligns with the apparent legislative objective of promoting the collection of child support, as explained below. First, we hold that CSSD's withholding order issued under AS 25.27.250 was ineffective in this case because it was not issued against property "due, owing, or belonging" to Lewis. Therefore, we need not address the parties' arguments regarding the applicability of the priority under 25.27.250(i). Second, we hold that the requirements of AS 25.27.230(d) apply to judgment liens in nonjudicial foreclosures, including those that are senior to a CSSD lien.[11] And our interpretation of AS 25.27.230(d) effectively provides a priority for CSSD liens over competing judgment liens. Accordingly, as trustee, Sayer Law was required to distribute proceeds from the foreclosure sale under AS 34.20.080(f). But under AS 25.27.230(d) Sayer Law was prohibited from transferring the surplus funds to judgment lienholders, including Alaska USA, until after the CSSD lien had been satisfied.

---

[10] Alaska Statute 34.20.080(f) provides the order of priority for distribution of cash proceeds following the sale of real property in nonjudicial foreclosures. After the deed of trust beneficiary is paid in full, then persons holding a recorded interest are entitled to any surplus funds in order of priority. AS 34.20.080(f)(2). Finally, if there are any surplus funds remaining after satisfaction of the recorded interests, the trustor may receive the funds, provided that the trustor is still the owner of the property at the time of the foreclosure sale. AS 34.20.080(f)(3).

[11] As explained below, we do not reach the question of whether the requirements of AS 25.27.230(d) apply to creditors holding a purchase money security interest in the property, such as deeds of trust.

**A. A CSSD Withholding Order Issued Under AS 25.27.250 Is Ineffective Where There Is No Property "Due, Owing, Or Belonging" To A Child Support Obligor.**

Alaska Statute 25.27.250(c) allows CSSD to issue withholding orders to third parties "when it has reason to believe" that a party is in possession of "property that is due, owing, or belonging to the obligor."[12] CSSD argues that its issuance of a withholding order in this case allowed Sayer Law to deliver surplus funds to CSSD because Lewis retained an interest in the proceeds from the foreclosure sale. But AS 25.27.250(c) does not provide that CSSD's withholding orders are effective with respect to *any* interest the obligor may have; rather, it provides that CSSD may only order a third party to deliver property due, owing, or belonging to the obligor.[13]

Because Alaska USA's and CSSD's liens both attached to the surplus funds following the sale and the surplus was insufficient to satisfy both liens, Sayer Law was not in possession of any property due, owing, or belonging to Lewis at the time CSSD issued the withholding order. Even if CSSD is correct that Lewis's interest in the surplus did not "vanish" for lack of priority, Lewis was not entitled to any of the surplus funds at the time CSSD issued the withholding order, and there was thus no property due, owing, or belonging to Lewis. As a result, CSSD's withholding order was ineffectual.

The district and superior courts, and therefore the parties' original briefing, focused on the interpretation of AS 25.27.250(i), which grants the agency's withholding orders "priority over all other attachments, executions, garnishments, or other legal process brought under state law against the same property unless otherwise ordered by the court."[14] But because we conclude that there were no funds due, owing,

---

[12] AS 25.27.250(c).

[13] *Id*.

[14] AS 25.27.250(i).

or belonging to Lewis in this case, we do not reach the parties' statutory interpretation arguments related to AS 25.27.250(i). For the same reason, we do not address Alaska USA's argument that effectuating the withholding order would deprive creditors of fair notice and due process under the Alaska Constitution.

> **1.** **Alaska USA's and CSSD's liens automatically attached to the surplus funds after the nonjudicial foreclosure sale.**

A judgment lien is an interest in real property that is established when the lienholder files a certified copy of a judgment with the recorder of the recording district.[15] When CSSD asserts a lien to enforce a child support order, AS 25.27.230(f) provides that the lien is a judgment lien which may be enforced by execution.[16] Before the nonjudicial foreclosure sale, Alaska USA's and CSSD's judgment liens were properly recorded and provided each of them with an interest in Lewis's real property.

---

[15] AS 09.30.010 ("From the recording, the judgment or decree becomes a lien upon the real property of the defendant that is in the recording district, that is not exempt from execution, and that is owned by the defendant at the time or acquired by the defendant afterward but before the lien expires."); *see also* David Gray Carlson, *Critique of Money Judgment Part One: Liens on New York Real Property*, 82 ST. JOHN'S L. REV. 1291, 1300 (2008) ("The creation of a lien is the transsubstantial moment at which a plaintiff's in personam right graduates into a right in rem. At this point, the plaintiff with a money judgment becomes a property owner. The name of the plaintiff's property interest is a lien. It is commonly called a judicial lien or judgment lien to differentiate it from consensually created liens (mortgages or security interests) or tax liens."); *see Gutchen v. Gabriel*, 49 P.3d 223, 225-26 (Alaska 2002) (holding judgment lien survived bankruptcy proceeding because lien is enforceable *in rem*); *cf. Brooks v. R&M Consultants, Inc.*, 613 P.2d 268, 269 (Alaska 1980) (holding that mechanic's lien is not created until written claim of lien is filed with recorder of recording district in which property is located).

[16] AS 25.27.230(f). While CSSD liens are considered judgment liens, as discussed *infra* in Section IV.B, CSSD liens differ from judgment liens under AS 09.30.010 in some important respects.

The nonjudicial foreclosure sale eliminated the interests of both Alaska USA and CSSD in the real property at the time it was sold.[17]  And the foreclosure sale also extinguished Lewis's rights in the real property.[18]  But after the foreclosure sale, Alaska USA's and CSSD's liens automatically attached to the surplus proceeds for the reasons explained below.[19]

In a nonjudicial foreclosure, AS 34.20.080(f)(2) requires the trustee to distribute surplus proceeds to "persons who held, at the time of the sale, recorded interests . . . in the property . . . according to the priority of the recorded interest."[20]  While the statute does not explicitly state that the recorded property interests attach to the surplus, we conclude that it is the attachment of the interests that allows the distribution under AS 34.20.080 to occur.

We are persuaded by the explanation of this principle in the Restatement (Third) of Property: Mortgages.  The commentary to the Restatement explains that a surplus from a foreclosure sale operates as a substitute res, such that liens attached to the original property are also attached to the surplus.[21]  When a foreclosure sale on real property occurs, and there is a surplus associated with the sale, the surplus "represents

---

[17]     *Adams v. FedAlaska Fed. Credit Union*, 757 P.2d 1040, 1042 (Alaska 1988) ("Upon selling the property the interests created subsequent to the deed, including those of junior lienholders, are cut off."); AS 34.20.090(a); *see also Burnett, Waldock & Padgett Invs. v. C.B.S. Realty*, 668 P.2d 819, 822-23 (Alaska 1983) ("We have interpreted this statute to mean that the land purchased at a deed of trust sale is subject to prior encumbrances, but not to those made after the deed of trust is executed.").

[18]     AS 34.20.080(i) ("Unless a sale is rescinded under (g) of this section, the sale completely terminates the rights of the trustor of the trust deed in the property.").

[19]     As discussed below, Lewis also retained a contingent interest in the real property which attached to the surplus funds.

[20]     AS 34.20.080(f)(2).

[21]     RESTATEMENT (THIRD) OF PROP.: MORTGS. § 7.4 cmt. a (A.L.I. 1997).

what remains of the equity of redemption."[22] "The surplus stands in the place of the foreclosed real estate, and the liens and interests that previously attached to the real estate now attach to the surplus."[23] This is what allows the surplus to be "applied to liens and other interests terminated by the foreclosure in order of their priority."[24]

Here, Alaska USA and CSSD both had recorded judgment liens at the time of the foreclosure sale, creating interests in Lewis's property. The interests in the real property were extinguished upon sale; however, the surplus funds "st[ood] in the place" of the real property and the interests created by the liens automatically attached to the surplus proceeds from the sale.

---

[22] *Id.*

[23] *Id.* Other courts and commentators have similarly characterized foreclosure surplus property as a substitute res. *See, e.g.*, *First Fed. Sav. & Loan Ass'n of Rochester v. Brown*, 434 N.Y.S.2d 306, 310 (N.Y. App. Div. 1980) ("Surplus money takes the place of the equity of redemption and only one who had a vested estate or interest in the land sold under foreclosure which was cut off by the foreclosure sale is entitled to share in the surplus money with priority in each creditor determined by the filing date of his lien or judgment."); *Grand Teton Mountain Invs., LLC v. Beach Props., LLC*, 385 S.W.3d 499, 502 (Mo. App. 2012) ("[A] foreclosure sale surplus 'retains the character of real estate for the purpose of determining who is entitled to receive it . . . .' " (quoting *Roy v. Roy*, 172 So. 253, 254 (Ala. 1937))); 1 GRANT S. NELSON ET AL., REAL ESTATE FINANCE LAW § 7:32, at 1030 (6th ed. 2015) ("[T]he surplus stands in the place of the foreclosed real estate and the liens and interests that previously attached to that real estate now attach to the surplus.").

[24] RESTATEMENT (THIRD) OF PROP.: MORTGS. § 7.4 (A.L.I. 1997). Neither party appears to seriously dispute the fact that the liens automatically attached to the surplus, although CSSD makes an argument in its briefing that "if Mr. Lewis had absolutely no interest in the surplus funds, then *neither* lien could attach to the funds." (Emphasis in original.) But as clarified above, the attachment of the liens to the surplus is not related to whether Lewis had an interest in the surplus funds; it instead arises from the surplus "standing in place" of Lewis's interest in the real property, to which the liens were already attached.

**2.    CSSD's withholding order had no effect on the distribution of the surplus funds because Sayer Law was not in possession of any property "due, owing, or belonging" to Lewis at the time the order was issued.**

At the time the foreclosure sale occurred in April 2018, there were two recorded liens attached to Lewis's property:   Alaska USA's judgment lien for $32,693.42 plus interest and CSSD's lien issued under AS 25.27.230(d) for $14,241.35. After the sale and before CSSD issued its withholding order, Sayer Law notified CSSD that the surplus was $34,590.31.  As explained above, both liens attached to the surplus funds from the sale.

Following the sale, CSSD issued a withholding order pursuant to AS 25.27.250(c) directing Sayer Law to deliver $25,428.20 of the surplus funds to CSSD.  Pursuant to a withholding order issued under AS 25.27.250, a party possessing property "due, owing, or belonging" to the obligor is required to withhold the property from the obligor and deliver the property to CSSD.[25]  Here, CSSD's withholding order obligated Sayer Law to withhold and deliver any property that was due, owing, or belonging to Lewis.[26]

But in this case, when CSSD issued its withholding order, there was nothing for Sayer Law to deliver:  There was no property due, owing, or belonging to Lewis.  The surplus funds — $34,590.31 — were insufficient to satisfy both liens,

---

[25]    AS 25.27.250(f).  To the extent that CSSD and Sayer Law imply that the withholding order could also have priority by serving as an enforcement mechanism for CSSD's lien, this argument is unpersuasive.  The statutes indicate that the withholding order and lien are two distinct mechanisms for collection.  First, AS 25.27.250 contains no reference to enforcement of a lien created under AS 25.27.230.  And second, AS 25.27.230(f) provides that a CSSD lien may be enforced by execution under AS 09.35, without reference to withholding orders under AS 25.27.250.

[26]    *Cf. Reynolds v. Sisco Grp., Inc.*, 70 P.3d 388, 391-92 (Alaska 2003) (holding property did not "belong" to judgment debtor's estate if creditor had perfected security interest in property).

which totaled $46,934.77 without interest. The entire surplus was subject to the outstanding liens and Lewis was not entitled to any of the surplus funds; Sayer Law possessed no property that was due, owing, or belonging to him. Despite this, CSSD issued the withholding order directing Sayer Law to deliver $25,428.20 of the surplus funds to CSSD. But because there were no such funds due, owing, or belonging to Lewis, there was no factual or legal basis to conclude that any of these funds were properly subject to CSSD's withholding order.

CSSD correctly notes that it would be inaccurate to declare that Lewis had no interest in the surplus proceeds after the sale. In fact, Alaska USA acknowledges that Lewis retained a "contingent interest in the foreclosure sale proceeds if any funds remained after paying the recorded interest holders." But in this case, it is ultimately immaterial whether Lewis retained this contingent interest because AS 25.27.250 does not provide that a withholding order allows CSSD to collect on *any* property interest. Rather, it provides only that property "due, owing or belonging to the obligor" shall be withheld and delivered to CSSD.[27] None of the surplus funds in this case were due, owing, or belonging to Lewis at the time the withholding order was issued, and thus, the withholding order was ineffective.

---

[27] AS 25.27.250(f). Moreover, the withholding order appeared to specifically acknowledge that CSSD's interest in the property could only attach to Lewis's interest: The withholding order specifically instructed Sayer Law to "indicate the value . . . of [the property possessed] *less the amount of any outstanding lien or secured interest against the property*" (emphasis added).

CSSD further argues that the language of AS 25.27.250 is "broad" such that it "routinely sends withholding orders to entities" as it is statutorily authorized to do. But whether CSSD is authorized to issue a withholding order and whether that withholding order has any legal effect are two separate questions. Even if CSSD was entitled to issue a withholding order under AS 25.27.250(c), Sayer Law was required to withhold and deliver only property "due, owing, or belonging" to Lewis, of which there was none.

**B.    The Requirements Of AS 25.27.230(d) Apply In Nonjudicial Foreclosure Proceedings Against Judgment Lienholders.**

When CSSD enforces a child support order, the law requires the agency to assert a lien on the real or personal property of the obligor if the obligor is in arrears on support payments.[28]  Such a lien is effective on the date it is recorded.[29]  Alaska Statute 25.27.230(d) commands that when "any person, political subdivision, or department of the state" has both possession of property that may be subject to the lien and actual notice of the CSSD lien, then that property "may not be paid over, released, sold, transferred, encumbered, or conveyed" unless the lien has been waived by CSSD or the lien has been released by the superior court or an administrative hearing officer.[30]  Thus, unless certain conditions are met, AS 25.27.230(d) prohibits certain transactions related to interests in property that have been burdened by CSSD liens.

---

[28]    AS 25.27.230(a).

[29]    AS 25.27.230(c).

[30]    The full text of the statute provides:

Whenever a lien has been recorded under this section and there is in the possession of any person, political subdivision, or department of the state having actual notice of the lien any property that may be subject to the lien, that property may not be paid over, released, sold, transferred, encumbered, or conveyed unless

(1) a written release or waiver signed by a representative of the agency has been delivered to the person, political subdivision, or department of the state; or

(2) a decision has been made in a hearing held under AS 25.27.170 or by a superior court ordering release of the lien on the grounds that no debt exists or that the debt has been satisfied.

AS 25.27.230(d).

Here, Sayer Law was in possession of the proceeds of the nonjudicial foreclosure sale, which were subject to a CSSD lien issued under AS 25.27.230, and Sayer Law had actual notice of the lien. Further, CSSD did not provide a waiver of its lien, nor was the lien released by an order from the superior court or an administrative hearing officer.[31] Thus, under AS 25.27.230(d), Sayer Law was prohibited from transferring the surplus proceeds from the nonjudicial foreclosure sale to the judgment lienholder, Alaska USA.

Alaska USA argues against this interpretation, asserting that a literal reading of AS 25.27.230(d) would lead to an "absurd result" by effectively granting the CSSD lien a super priority over all earlier recorded property interests, including the deed of trust held by Wells Fargo. The credit union maintains that "[t]he only way to construe AS 25.27.230(d), without reaching the absurd result suggested by CSSD, is to construe it to not apply to non-judicial foreclosures and to only apply to unencumbered property or property which is encumbered by liens which are junior to a CSSD lien." The credit union also contends that by not attending or objecting to the sale, CSSD waived the protections under AS 25.27.230(d). We disagree.

First, we need not address the concern that a literal interpretation of AS 25.27.230(d) would effectively grant CSSD liens a priority over all earlier recorded property interests, including the deed of trust held by Wells Fargo. This is because the dispute before us does not include such a claim. Wells Fargo has never been a party to this case, and its deed of trust was fully satisfied in the nonjudicial foreclosure proceedings. Moreover, CSSD "assert[ed] its lien against . . . the surplus funds" from the foreclosure sale, so it never contested that the deed of trust had priority, and the agency expressly disavows any such claim on appeal.

---

[31] *Id.*

Second, Alaska USA's reading of AS 25.27.230(d), that it should "only apply to unencumbered property or property which is encumbered by liens which are junior to a CSSD lien," would render the statute superfluous. Under AS 34.20.080(f)(2), if CSSD filed a lien on unencumbered property, it would have first priority to receive any surplus because it filed the first lien.[32] Likewise, CSSD's lien would have priority under AS 09.30.020. Following Alaska USA's logic, AS 25.27.230(d) would have no effect on how a CSSD lien is treated; CSSD would simply file a judgment lien and the normal priority rules under AS 09.30.020 and AS 34.20.080(f)(2) would apply. But the legislature would not have enacted AS 25.27.230(d) if it intended the normal priority rules to apply to a CSSD lien. We decline to adopt Alaska USA's reading of the statute because we must assume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect."[33]

Third, the text and legislative policy underpinning AS 25.27.230(d) confirm that it should apply to judgment lienholders in nonjudicial foreclosure proceedings. The statute's requirements effectively provide CSSD liens a priority beyond that to which they are entitled under other provisions of law. When a holder of property has actual notice that the property is burdened by a CSSD lien, that property cannot be transferred unless CSSD provides a waiver of the lien or the lien is released by order of the superior court or an administrative hearing officer.[34] And absent such a waiver or release, AS 25.27.230(d) interrupts the transfer of interests in property that

---

[32] AS 34.20.080(f)(2) provides that persons holding recorded interests shall be paid according to priority. *See also* AS 09.30.020 (providing that earlier-recorded interests have priority over those recorded later).

[33] *Johnson v. State, Dep't of Corr.*, 380 P.3d 653, 656 (Alaska 2016) (quoting *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 642 (Alaska 2011)).

[34] AS 25.27.230(d)(1), (2).

has been burdened by a CSSD lien, effectively providing a priority to CSSD liens over other judgment liens, including liens recorded prior to CSSD liens.

The transfer of the surplus funds from the nonjudicial foreclosure sale by Sayer Law was plainly within the purview of AS 25.27.230(d) because the statute prohibits the "transfer" of property subject to "a lien recorded under [AS 25.27.230]" unless an appropriate waiver or release is obtained.[35] CSSD's lien automatically attached to the surplus proceeds after the real property encumbered by the lien was sold in the nonjudicial foreclosure sale.[36] Thus, the plain language of AS 25.27.230(d) prohibited Sayer Law's transfer of the surplus funds without an appropriate waiver or release. Moreover, the text of AS 25.27.230 neither limits the scope of its application to "legal process" nor contains language that would otherwise avoid application of AS 25.27.230(d) to judgment lienholders in nonjudicial foreclosure proceedings.[37]

---

[35] *See id.*

[36] *See* RESTATEMENT (THIRD) OF PROP.: MORTGS. § 7.4 cmt. a (A.L.I. 1997); *see also First Fed. Sav. & Loan Ass'n of Rochester v. Brown*, 434 N.Y.S.2d 306, 310 (N.Y. App. Div. 1980) ("Surplus money takes the place of the equity of redemption and only one who had a vested estate or interest in the land sold under foreclosure which was cut off by the foreclosure sale is entitled to share in the surplus money with priority in each creditor determined by the filing date of his lien or judgment.").

[37] In support of its argument that AS 25.27.230 does not apply to nonjudicial foreclosures, Alaska USA points to *Thomas v. Joseph P. Casteel Tr.*, 496 P.3d 403 (Alaska 2021), arguing it demonstrates that "CSSD had a longstanding governing policy of not participating in non-judicial foreclosures, recognizing the inapplicability of AS 25.27.230(d) to non-judicial foreclosures." But interpretation of AS 25.27.230 was not at issue in *Thomas*, and *Thomas* does not provide any clear statement of CSSD's underlying policies with respect to competing judgment liens. Summarizing the facts of that case, we stated in *Thomas* that "under [CSSD's] governing policy, it declined to participate or otherwise protect its lien in the foreclosure process." *Id.* at 408. Although we indicated CSSD's policy led it to decline to participate in the foreclosure sale at issue in *Thomas*, this statement alone does not demonstrate that "CSSD had a longstanding governing policy of not participating in non-judicial foreclosures." In short, it is not clear what CSSD's policy is regarding competing judgment liens when a foreclosure sale results in a surplus.

Fourth, applying the requirements of AS 25.27.230(d) to judgment liens furthers the legislature's purpose of "enhanc[ing] the efforts of those persons who seek to enforce the payment of child support obligations."[38] And this important policy goal justifies upsetting the traditional priority rules for judgment liens.[39] In a nonjudicial foreclosure sale, after the deed of trust beneficiary is paid, any surplus funds would, in the absence of additional property interests, be returned to the equity-holder parent. Alaska Statute 25.27.230(d) enhances CSSD's ability to collect child support by granting it an effective priority over those surplus funds to ensure that parents meet their child support obligations.[40]

---

[38] *Ralston v. State, Child Support Enf't Div. ex rel. Wall*, 728 P.2d 635, 637 (Alaska 1986) (quoting ch. 144, § 1, SLA 1984); *see also State, Dep't of Revenue, Child Support Enf't Div. v. Deleon*, 103 P.3d 897, 900 (Alaska 2004) ("Alaska Statute 25.27 has the purpose of ensuring that parents meet their support obligations."); *State, Dep't of Revenue, Child Support Enf't Div. v. Leitch*, 999 P.2d 782, 784 (Alaska 2000) (recognizing "broad authority and power" of Child Support Enforcement Division to collect child support); *State, Dep't of Revenue, Child Support Enf't Div. v. Allsop*, 902 P.2d 790, 794 (Alaska 1995) ("The administrative remedies available to CSED . . . provide the agency with exceptional degree of power to collect support from delinquent parents." (citing AS 25.27.250; AS 25.27.230; AS 25.27.253)).

[39] Our conclusion is further supported by the fact that CSSD liens differ from other judgment liens in a few other respects. For instance, CSSD liens may be imposed against both real and personal property under AS 25.27.230(a), while other judgment liens may only be imposed against real property under AS 09.30.010. Additionally, CSSD can serve its judgment liens on banks and other third-party institutions that may have money belonging to the obligor, and there is no comparable provision for other judgment liens. AS 25.27.240. Finally, failure to comply with a CSSD lien can result in the imposition of civil liability under AS 25.27.260(a).

[40] Alaska USA also appears to suggest that CSSD had no interest in the surplus proceeds from the nonjudicial foreclosure sale because CSSD was merely a "garnishing creditor." We do not address this argument with respect to AS 25.27.250 because we resolve the issue in Alaska USA's favor on other grounds. To the extent Alaska USA also intended this argument to be directed toward the lien under AS 25.27.230, it is rejected. This is because AS 25.27.230(f) provides that a CSSD lien

Finally, Alaska USA argues that "[a]lthough CSSD had a statutory right to prohibit the non-judicial foreclosure sale under AS 25.27.230(d), it waived that right by not attending or objecting to the sale despite having received notice of it." This argument is not persuasive. First, to the extent that CSSD had a duty to act to protect its statutory rights, it did so with regard to the surplus funds here. The agency sent a letter to the trustee, Sayer Law, stating that the agency was asserting its lien against Lewis's property and that, under AS 25.27.230(d), the surplus funds "must first be distributed to CSSD for payment of Mr. Lewis' child support arrears." Second, the text of AS 25.27.230 does not impose a duty on CSSD to attend or object to the foreclosure sale.[41]

Consistent with the plain text of the statute and the express purpose of the legislature, we hold that the requirements of AS 25.27.230(d) apply to judgment lienholders in nonjudicial foreclosures, including judgment liens that were recorded prior to a CSSD lien.

---

"is a judgment lien," meaning it was not a writ of garnishment which would limit CSSD's entitlement to only Lewis's rights in the proceeds.

[41] Contrary to Alaska USA's assertion, our observation in *Thomas* that "CSSD received actual notice of the default and sale; under its governing policy, it declined to participate or otherwise protect its lien in the foreclosure process" does not support the credit union's position. 496 P.3d at 408. As noted above, *Thomas* contains no reference to AS 25.27.230 and thus provides little support to Alaska USA. *See* discussion *supra* note 37. To the extent that Alaska USA's discussion of *Thomas* also raises an argument about equitable subordination, we hold that this argument is waived, because the credit union did not raise it in the trial court.

**C. Under AS 25.27.230(d) Sayer Law Was Prohibited From Transferring Surplus Funds To Alaska USA Until After The CSSD Lien Had Been Satisfied.**

Our interpretation of AS 25.27.230(d) provides an effective priority for CSSD liens over competing judgment liens.[42] This priority applies when a holder of any other property interest seeks to "pa[y] over, release[], s[ell], transfer[], encumber[], or convey[]" property subject to a CSSD lien.[43]

But our holding does not interfere with the priority rule established by AS 34.20.080(f)(2) in its application to other junior interest holders. Alaska Statute 34.20.080(f)(2) states that the proceeds of a nonjudicial foreclosure sale must first go to the deed of trust beneficiary,[44] then to "the persons who held, at the time of the sale, recorded interests . . . in the property, that were subordinate to the foreclosed deed of trust" in the order of priority.[45] Once the deed of trust beneficiary and CSSD have been paid (or the lien has been otherwise waived or released), any remaining surplus funds may be transferred to the holders of junior property interests according to AS 34.20.080(f)(2). Thus, the priority rules for distribution laid out in AS 34.20.080(f)(2) remain in place for nonjudicial foreclosure, except when the transfer of surplus funds to judgment lienholders is prohibited by AS 25.27.230(d). The

---

[42] Our interpretation of the statutes may affect judgment creditors' decisions to bid on property in nonjudicial foreclosures. If our interpretation is contrary to the legislature's intent, amendments to the relevant child support statutes could clarify the interaction between child support liens, other liens, and mortgages. *See, e.g.*, N.H. Rev. Stat. Ann. § 161-C:10(V) ("No lien created under this section shall have priority over any prior recorded lien."); Va. Code Ann. § 63.2-1927 (A child support lien "shall be subordinate to the lien of any prior mortgagee."); Wash. Rev. Code Ann. § 74.20A.060(3) ("The claim of the department for a support debt, not paid when due, shall be a lien against all property of the debtor with priority of a secured creditor.").

[43] AS 25.27.230(d).

[44] AS 34.20.080(f)(1).

[45] AS 34.20.080(f)(2).

prohibition remains in place until the CSSD lien is satisfied or an appropriate waiver or release is obtained; only then may transfer of surplus funds resume under AS 34.20.080(f)(2).

Here, the withholding order issued by CSSD under AS 25.27.250 was inapplicable to the surplus from the foreclosure sale; thus, the only remaining issue was whether Alaska USA's or CSSD's lien had priority. Sayer Law, as trustee, was required under AS 34.20.080(f)(2) to distribute proceeds from the foreclosure sale, but AS 25.27.230(d) prohibited Sayer Law from transferring the surplus funds from the sale to judgment lienholders, including Alaska USA, until after the CSSD lien had been satisfied. This is because CSSD had not waived its lien, and the lien had not been released by either the superior court or an administrative officer. After satisfaction of the agency's lien, the trustee observed the priority of AS 34.20.080(f)(2) by transferring the remaining funds to Alaska USA. Therefore, Sayer Law complied with the law by satisfying CSSD's lien before Alaska USA's lien, even though the credit union's lien was recorded earlier than the agency's lien.

## V.    CONCLUSION

We AFFIRM the superior court's decision affirming the judgment of the district court.